DUNWOODY *v.* ROYAL INDEMNITY CO.

1. INSURANCE—ACCIDENT INSURANCE—SEPTIC POISONING—EVIDENCE —ADMISSIBILITY—PHYSICIANS AND SURGEONS.

In an action on an accident insurance policy containing a rider covering accidental septic poisoning resulting from external inoculation, where the theory of plaintiff was that insured, a physician, was accidentally inoculated with the septic germs of influenza by a patient he was examining involuntarily coughing in his face, thereby injecting the germs into his mouth, which caused his death, it was competent to establish by said patient what his symptoms were, and by medical evidence what disease such symptoms indicated.

2. SAME—EXPERT TESTIMONY—ADMISSIBILITY.

Testimony by an officer of defendant insurance company as to the meaning of certain words in the rider, as understood by the "class of people it was intended to cover," *held*, properly rejected, where witness had not qualified himself to testify on the subject.

3. EVIDENCE—CREDIT TO BE GIVEN MEDICAL TESTIMONY FOR THE JURY.

Where the medical testimony was in conflict, the credit to be given thereto, as well as the other testimony, was for the jury.

4. INSURANCE—ACCIDENT INSURANCE—MEDICAL TESTIMONY — EVIDENCE—CONJECTURE—QUESTION FOR JURY.

Where the medical testimony of plaintiff, if believed, made as certain as medical testimony can make certain, that deceased had influenza followed by pneumonia, that it was septic in its nature, of a most virulent type, and that it was contracted from the sputum, septic matter, which the patient accidentally threw into insured's mouth, it cannot be said that the cause of his death rests on conjecture, guesses, or speculation, and the case was properly submitted to the jury.

Error to Wayne; Goff (John H.), J.    Submitted January 6, 1922.    (Docket No. 56.)    Decided June 5, 1922.

Assumpsit by Sarah Dunwoody against the Royal Indemnity Company on a policy of insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Frederick J. Ward,* for appellant.

*Howard H. Campbell* and *Hollis Harshman,* for appellee.

FELLOWS, C. J.   On January 24, 1916, defendant issued a policy of accident insurance to Dr. John F. Dunwoody of Detroit. Plaintiff was named as beneficiary. Attached to and made a part of the policy was the following rider:

"SEPTIC POISONING RIDER (*a*) No. 235.
Royal Indemnity Company.

"In consideration of an additional premium of $1.25 it is hereby understood and agreed that septic infection resulting from external inoculation through accidental contact with septic matter shall be regarded as an accidental bodily injury within the terms of the policy named below.

"This rider is valid only when attached to a policy issued to a physician, surgeon, dentist, undertaker or embalmer.

"Nothing herein contained shall be held to waive, alter, vary or extend any of the conditions, agreements or limitations of this policy, other than as above stated.

"This rider, issued by the Royal Indemnity Company, when countersigned by the company's duly authorized official or agent and attached to Policy No. AR-1799 issued to John F. Dunwoody, M. D., of Detroit, Michigan, shall be valid and shall form part of the policy.

"Countersigned at Detroit, Michigan, this 24th day of January, 1916.

"CHAS. H. HOLLAND,
"Vice-President and General Manager.

"Detroit Insurance Agency,
"Authorized Agent.
"By (signed) L. J. LEPPER,
"Secretary-Treasurer."

This policy, including the rider, was in force at the time of the events here related.   In October, 1918, influenza was quite prevalent in Detroit.   On October 9th, Dr. Dunwoody was examining a patient in his office, using a stethoscope.   The patient was standing, the doctor sitting in front of him.   He directed the patient to take a deep breath.   In so doing the patient involuntarily coughed violently, the sputum flying into the doctor's mouth, upon his lips and in his face. Doctor Dunwoody was then in robust health and active in his profession.   Two days later he was feverish and the third day took to his bed, and died October 20th.

The defendant having denied its liability, this action was brought.   It is the theory and claim of the plaintiff that the death of Dr. Dunwoody was due to the fact that the septic matter which the patient by accidentally coughing threw into his mouth and upon his lips inoculated deceased's system with virulent influenza germs, septic matter, and that this brings the case within the provisions of the rider.   This theory was submitted to the jury.   To establish her case plaintiff called the patient who coughed in the doctor's face and over defendant's objections he was permitted to testify to his physical condition on the day of the incident.   We do not discover any valid objection to this evidence.   We think it was competent to establish (1) by the patient himself what his symptoms were, and (2) by medical evidence what disease such symptoms indicated.

One of defendant's officers was called as a witness by defendant and it was sought to prove by him the meaning of certain words in the rider as understood by the "class of people it was intended to cover."   An objection to his testimony was sustained, and properly so.   He had not qualified himself to testify on this subject.   Defendant's medical witnesses were per-

mitted to fully testify as to the meaning given these words and how they were understood by the profession.

We find no difficulty in following the contention of defendant's counsel that verdicts may not rest on conjecture, guesses or speculation.   We do not follow him in his contention that the verdict in this case so rests.   Plaintiff's medical testimony, if believed, makes as certain as medical testimony can make certain that deceased had influenza followed by pneumonia, that it was septic in its nature, of a most virulent type, and that it was contracted from the sputum, septic matter, which the patient accidentally threw into his mouth.   One of the physicians who attended Dr. Dunwoody testified:

"This was not an ordinary case of influenza.   The peculiar part about it was the septic nature of it, the virulence of it."

Another physician who saw him several times during his fatal illness in answer to a hypothetical question said:

"My opinion is that the physician in question contracted influenza from his patient that he treated a few days previous, from direct contact of an infected material from the coughing into his face and mouth. The sputum from the patient with influenza would be septic matter."

Defendant's medical testimony was in conflict with that produced by the plaintiff.   The credit to be given the medical testimony, as well as the other testimony, was for the jury.   By the plaintiff's medical testimony the cause of Dr. Dunwoody's death was not left to conjecture or speculation unless we are prepared to hold that the opinions of men learned in the medical profession are conjecture and speculation, a doctrine to which we can not subscribe.

In the case of *Sullivan* v. *Modern Brotherhood of*

*America,* 167 Mich. 524 (42 L. R. A. [N. S.] 140, Ann. Cas. 1913A, 1116), plaintiff splashed water in her eye while washing clothes.   A gonorrheal infection developed in the eye, resulting in its loss.   It was held that the cause of the loss of the eye was not so conjectural as to require a directed verdict for the defendant, and that the plaintiff had made a case for the jury of an accidental loss of the eye.   A large number of authorities were there considered.

In *Dove* v. *Alpena Hide & Leather Co.,* 198 Mich. 132, deceased while handling hides inhaled septic germs which infected his throat, causing death.   It was held that his death resulted from an accident within the meaning of the workmen's compensation act. Mr. Justice BIRD, speaking for a majority of the court, there said:

. "Counsel inquire where the accident is which led to his death.   The accidental feature of the case is that by chance the septic germ or germs were taken up by his respiratory organs and carried into his system, an occurrence which the testimony shows probably did happen, but which was unusual in the work at which he was engaged."

The following cases tend to support plaintiff's contention:   *Blaess* v. *Dolph,* 195 Mich. 137; *Cary* v. *Insurance Co.,* 127 Wis. 67 (106 N. W. 1055, 5 L. R. A. [N. S.] 926, 115 Am. St. Rep. 997) ; *Martin* v. *Accident Ass'n,* 61 Hun (N. Y.), 467; *Martin* v. *Indemnity Co.,* 151 N. Y. 94 (45 N. E. 377) ; *Freeman* v. *Accident Ass'n,* 156 Mass. 351 (30 N. E. 1013, 17 L. R. A. 753) ; *Omberg* v. *Accident Ass'n,* 101 Ky. 303 (40 S. W. 909, 72 Am. St. Rep. 413) ; *Delaney* v. *Accident Club,* 121 Iowa, 528 (97 N. W. 91, 63 L. R. A. 603) ; *Nax* v. *Insurance Co.,* 130 Fed. 985; *United States Mut. Acc. Ass'n* v. *Barry,* 131 U. S. 100 (9 Sup. Ct. 755) ; *Western Commercial Travelers' Ass'n* v. *Smith,* 29 C. C. A. 223, 85 Fed. 401 (40 L. R. A. 653) ; *Engels*

*Copper Mining Co.* v. *Accident Commission,* 183 Cal. 714 (192 Pac. 845, 11 A. L. R. 785) ; *San Francisco* v. *Accident Commission,* 183 Cal. 273 (191 Pac. 26). Other cases might be added to this list.     Nor is defendant's contention without support.     An exceptionally parallel case in its support is *Fidelity & Casualty Co.* v. *Thompson,* 83 C. C. A. 324, 154 Fed. 484 (11 L. R. A. [N. S.] 1069, 12 Ann. Cas. 181), in which case the opinion was written by Justice Van Devanter when he was circuit judge.     In that case the court reached a different result, possibly due to the language of the policy, than this court reached in *Sullivan* v. *Modern Brotherhood of America, supra.*

An examination of the authorities is convincing that the plaintiff made a case for the jury.

The judgment will be affirmed.

WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.