## FRANKAMP v. FORDNEY HOTEL.

1. WORDS AND PHRASES—"ACCIDENT"—DEFINITION.

An "accident" is defined to be "An unforeseen event occurring without the will or design of the person whose mere act causes it; an unexpected, unusual or undesigned occurrence; the effect of an unknown cause, or the cause being known, an unprecedented consequence of it; a casualty."

2. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—CONTRACTION OF TYPHOID FEVER—"ACCIDENT."

The contraction of typhoid fever by the head waitress in a hotel through drinking contaminated water furnished by the hotel from its own well, *held*, to be an accident within the meaning of the workmen's compensation act.

3. SAME—COURSE OF EMPLOYMENT.

Evidence *held*, to support an inference that plaintiff contracted the disease through drinking contaminated water furnished by the hotel, and that the accident therefore occurred during the course of her employment.

Certiorari to Department of Labor and Industry.

On recovery for incapacity resulting from disease within the meaning of compensation act, see note in L. R. A. 1916A, 289.

As to recovery under workmen's compensation act where disease is caused by or follows an accident, see notes in L. R. A. 1917D, 130; L. R. A. 1918F, 868.

Submitted January 5, 1923.    (Docket No. 54.)    De-cided April 27, 1923.

Ethel Frankamp presented her claim for compensation against the Fordney Hotel for an accidental injury in defendant's employ.    From an order awarding compensation, defendant and the Travelers Insurance Company, insurer, bring certiorari.    Affirmed.

*Vandeveer & Foster*, for appellants.

*William H. Martin*, for appellee.

MOORE, J.    The supply of water in Saginaw was thought to be impure.    To get water of a better quality the Fordney Hotel put down an artesian well on its own property and piped the water therefrom throughout the hotel except in the pool room.    On January 15, 1922, the plaintiff entered the employ of the hotel company as head waitress; she roomed and boarded in the hotel until the 23d of February when she was taken down with typhoid fever, which she claims was the result of drinking the water from the artesian well.    Soon after she was taken sick she was removed to a hospital.    It was some time before she could resume work.    She made a claim for compensation, which found its way in due course of time to the department of labor and industry, where an order was made granting her an award of $14 per week during the period of disability, and the sum of $675.54 for medical attention.    From this award the defendants have appealed.

The appellants discuss the case under two heads:

"1. Is the contraction of typhoid fever an accident within the meaning of the workmen's compensation act?

"2. Did the applicant contract typhoid fever in the course of her employment—or is the award based upon guess, speculation and conjecture?"

We quote from the brief:

"1. To justify recovery under this statute, there must be a personal injury accidentally sustained, which injury is approximately caused by accident. If the taking of typhoid germs into the system is a personal injury and an accident within the meaning of the law, and further if there is sufficient proof as to the source of the germs, then the award of the department of labor and industry might be correct. * * *

"We are familiar with the decision in *Dunwoody* v. *Indemnity Co.*, 218 Mich. 358, which is relied upon by the department of labor and industry in their finding of facts. Further, it is not surprising that the board is not familiar with the vast gulf which exists between the avenue of approach to the consideration and construction placed upon provisions in insurance policies and the consideration and construction placed upon provisions in a statute.

"The *Dunwoody Case* is not applicable to the facts herein involved, as in that case the court was considering an interpretation of an insurance contract which was drawn by an insurance company, and which, in accordance with all precedent, was interpreted strictly against the insurance company by this court, and properly so, under all existing authority."

So far as we know there is no Michigan case directly in point. In *Adams* v. *Lead & Color Works*, 182 Mich. 157 (L. R. A. 1916A, 283, Ann. Cas. 1916D, 689), it was held there could be no recovery for occupational diseases like lead poisoning, but it is evident that the occupation of head waitress in a hotel does not subject one to the liability of acquiring an occupational disease, and that typhoid fever is not an occupational disease.

The word "accident" is defined in Black's Law Dictionary as follows:

"Accident. An unforeseen event occurring without the will or design of the person whose mere act causes it; an unexpected, unusual or undesigned occurrence; the effect of an unknown cause, or, the

cause being known, an unprecedented consequence of it; a casualty."

How could Miss Frankamp foresee that if she drank the water supplied to her in the hotel she would be attacked with "typhoid fever?"

I think the language used in *Johnson* v. *Casualty Co.*, 184 Mich. 406 (L. R. A. 1916A, 475), is pertinent here:

"It is said death as the result of ptomaine poisoning does not create liability under this policy, counsel citing *American Accident Co.* v. *Reigart*, 92 Ky. 142 (17 S. W. 280), and *Bacon* v. *Accident Ass'n*, 123 N. Y. 304 (25 N. E. 399, 9 L. R. A. 617, 20 Am. St. Rep. 748). The first of these citations relates to the improper taking of an appeal and is not in point. The second case is distinguishable and is not controlling. The instant case is more like *Paul* v. *Insurance Co.*, 112 N. Y. 472 (20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758), where the liability of the company was sustained. No question would be raised here, I take it, if the assured by mistake had taken carbolic acid, when he intended to take a helpful medicine. *Travelers Insurance Co.* v. *Dunlap*, 160 Ill. 642 (43 N. E. 765, 52 Am. St. Rep. 355). Why, then, should it be said there is no liability when the assured, intending to take nourishing food, in fact took tainted food, which resulted in ptomaine poisoning and death? See Vance on Insurance, p. 570, and notes; Richards on Insurance Law, § 386, and notes; 1 Am. & Eng. Enc. Law (2d Ed.), p. 272, and p. 294; *Freeman* v. *Accident Ass'n*, 156 Mass. 351 (30 N. E. 1013, 17 L. R. A. 753); *Jiroch* v. *Insurance Co.*, 145 Mich. 375."

Why is not the same principle involved when, as in the instant case, one drinks contaminated water, when it was supposed they were drinking pure water.

In *Dove* v. *Alpena Hide & Leather Co.*, 198 Mich. 132, it was held that a case of septic poisoning entitled the claimant to an award. Justice BIRD said in part:

"Counsel inquire where the accident is which led to

his death.    The accidental feature of the case is that by chance the septic germ or germs were taken up by the respiratory organs and carried into his system, an occurrence which the testimony shows probably did happen, but which was unusual in the work at which he was engaged."

See, also, *Dunwoody* v. *Indemnity Co.*, 218 Mich. 358.

"2. Did the applicant contract typhoid fever in the course of her employment—or is the award based upon guess, speculation and conjecture?"

Counsel say that where the typhoid germs came from is a matter of conjecture.    Miss Frankamp's hours of work were from 7 o'clock in the morning to 9:30 in the morning, from 12 o'clock until 2 o'clock p. m., and from 6 o'clock until 8 o'clock p. m.    She testified on cross-examination that between those hours she was out of the hotel making calls, and that occasionally she took an automobile ride, and it is said by counsel that it might as well be urged that she got the typhoid germs from something outside of the hotel, and that it all rests in conjecture.

After the cross-examination was over the plaintiff was examined further.    We quote:

"*Q.* Have you any knowledge of the plumbing?
"*A.* The only way they get the water is from the deep well.
"*Mr. Foster:* That is what someone else told you?
"*A.* No, I have seen that with my own eyes.
"*Q.* That is the only water you drank, that you claim, from the deep well?
"*A.* Yes."

After the plaintiff was taken sick her attending physician caused a sample of the water to be sent to Lansing for analysis, and it developed the water was contaminated.

We quote from the record:

"*The Commissioner:* Did you investigate this case when you found out this was typhoid fever?

"*A.* I immediately reported it to the health officer, and asked the health department to make an investigation.

"*The Commissioner:* Did you hear Miss Frankamp's testimony?

"*A.* Yes, sir.

"*The Commissioner:* If it was proved there were typhoid germs in this water she claims she daily drank at the Hotel Fordney, where would be your opinion she contracted the disease?

"*A.* Not being able to determine any other source of infection, it would seem plausible that infection was caused through contaminated drinking water.

"*Q.* What would be your opinion?

"*A.* I would say then from the drinking water."

Another doctor, who was health officer of Saginaw when the plaintiff was taken sick, had his attention called to the drinking water at the hotel. A specimen was analyzed and a report returned to the health office from the State laboratory where the analysis was made.

We quote:

"*The Commissioner:* What is your opinion as to where Miss Frankamp contracted typhoid?

"*A.* My opinion was she contracted it in the Fordney Hotel?"

In *Blaess* v. *Dolph,* 195 Mich. at p. 144, Justice STONE said:

"We are of the opinion that an inference favorable to the claimant can be arrived at from the evidence in the case, without indulging in any guess or speculation. Germs cannot be traced in their individual wanderings, like persons. No one ever saw a germ go from a source of infection to its victim's body. Means and sources of infection are, as a general rule, based on observed conditions."

In *Dunwoody* v. *Indemnity Co.,* 218 Mich. at p. 361, it is said:

"We find no difficulty in following the contention of defendant's counsel that verdicts may not rest on conjecture, guesses or speculation.    We do not follow him in his contention that the verdict in this case so rests.    Plaintiff's medical testimony, if believed, makes as certain as medical testimony can make certain that deceased had influenza followed by pneumonia, that it was septic in its nature, of a most virulent type, and that it was contracted from the sputum, septic matter, which the patient accidentally threw into his mouth.    *   *   *

"Defendant's medical testimony was in conflict with that produced by the plaintiff.    The credit to be given the medical testimony, as well as the other testimony, was for the jury."

The award is affirmed, with costs to the plaintiff.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.