JOHN RISSMAN & SON, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(DORA HOWARD *et al.* Plaintiffs in Error.)

*Opinion filed October 28, 1926—Rehearing denied Dec. 16, 1926.*

1. WORKMEN'S COMPENSATION—*courts cannot set aside findings of Industrial Commission unless manifestly against weight of evidence.*  While an award under the Compensation act cannot rest upon conjecture or surmise or upon a choice between two views equally compatible with the evidence, it is the province of the Industrial Commission to draw reasonable inferences from evidentiary facts, and the courts cannot set aside its findings or awards unless manifestly against the weight of the evidence.

2. SAME—*what is an accident.*  An accident may be said to be an unforeseen or unexpected event of which a person's own misconduct is not the natural and proximate cause and which does not ordinarily and naturally result from his conduct.

3. SAME—*typhoid fever may be result of an accident.*  While typhoid fever is a disease it is not an occupational disease, and it may be contracted accidentally or as the result of an accident.

4. SAME—*when compensation is payable for death from typhoid fever.*  Compensation is payable for a death from typhoid fever as having been accidentally contracted by the deceased while employed in an overall factory, where the weight of the evidence shows that she, with other employees, used water furnished by her employer, that nearly one-half of the employees took sick with typhoid, and that the epidemic was not general in the community but was confined to employees of the factory, although there is no direct evidence that the water contained typhoid germs.

THOMPSON, J., dissenting.

Writ of Error to the Circuit Court of Vermilion county; the Hon. Walter J. Brewer, Judge, presiding.

W. J. McDonald, and Clark & Hutton, (H. Ernest Hutton, of counsel,) for plaintiffs in error.

H. M. Steely, and H. M. Steely, Jr., for defendant in error.

Mr. Justice Duncan delivered the opinion of the court:

On March 20, 1923, Dora Howard and William Howard, plaintiffs in error, were awarded compensation by an arbitrator in the sum of $7.50 a week for 220 weeks under paragraph (*c*) of section 7 of the Workmen's Compensation act on account of the accidental death of their daughter, Josephine Howard, who had been previous to her death employed to operate a power-driven sewing machine at the overall factory of John Rissman & Son, defendant in error, in Westville, Illinois, from January, 1920, to August 2, 1920, and that they were entitled to receive from respondent $1035 on March 28, 1923, with the remainder in weekly payments beginning one week later. The award was confirmed by the Industrial Commission, and the record of the commission was reviewed by the circuit court of Vermilion county on writ of *certiorari* and the award of the Industrial Commission was vacated and set aside by the court. This court allowed a writ of error to plaintiffs in error for review of the record.

On August 13, 1920, Josephine Howard died at the home of her said parents in Westville, Illinois, of typhoid fever. She contracted her illness at the factory of defendant in error and by reason thereof ceased work on August 2, 1920. She was twenty years of age at the time of her death and was unmarried. She lived with her parents and gave them her wages, $9.51 a week, for the support of the family, which consisted of the parents, the deceased and six other children, all but one of whom were younger

than the deceased. The defendant in error established its overall manufacturing plant in Westville in the fall of 1919. The factory was located in two rooms, which faced the east. The north room had formerly been used as a store and the south room as a saloon. An arched opening was cut in the wall between the two rooms. when the factory was started. About seventy-five women and girls, including deceased, were employed at the factory, and also two men,— one a janitor and the other a foreman. In the southwest corner of the north room there were partitioned off in that room two toilet rooms,—one for the women and girls and one for the men. In the women's toilet room there were two long sinks, with water faucets and drains, three toilets, and clothes hooks and nails on the walls for the hanging of coats, hats and towels. The water was supplied to the toilet rooms through pipes from an old well in the rear of the premises by an electric pump. The sewage and used water from the toilet rooms were carried underground to a dry well on the rear of the premises, near an alley. This dry well was probably twenty-five or thirty feet from the well from which the water was pumped. To the rear of the north room of the factory there was an old abandoned privy, the vault of which was about fifteen feet from the well from which the water was pumped and in which vault a large amount of excreta had been voided. The water pumped to the toilet rooms, as aforesaid, had been used for drinking purposes by the employees of the factory until some time in January or February, 1920, when some of the employees complained that it was dirty and did not taste well. Thereafter the janitor carried drinking water from a well known in the record as the Shimkus well, which was located on a lot to the south and west of the factory lot and about 150 feet from the factory. It was carried in two buckets, which were placed on a platform or bench in the west end of the north room of the factory, and the employees were warned not to drink water from the faucets.

In the latter part of May or the first of June, 1920, a large glass water cooler on a stand, with a container for ice around the mouth of the water bottle, was installed and the drinking water placed in it. The water was obtained from the Shimkus well until July 19, when, on orders from the factory foreman, the water was obtained from a well of one Dr. Williams. There was a tin cup furnished in the washroom when water was drunk there, and this cup was later kept at the water cooler. Some of the employees furnished glasses, and the employees drank from the tin cup and from each other's glasses promiscuously during the summer. One employee testified that the water furnished for drinking after they quit drinking the water from the faucets was not good; that the water bottle looked dirty and had streaks in it; that the janitor kept one of the buckets in which he carried water in the men's toilet room and the other under the water cooler. The janitor denied the keeping of either one of the buckets in the men's toilet room. He testified that after the first of February to the latter part of July he got all of the drinking water from the Shimkus well and rinsed the water bottle out daily; that he began getting water from Dr. Williams' well in July on orders from Mr. Jobe, the foreman, who said the Shimkus water was not good. Another witness testified that he talked to Mr. Jobe, the factory foreman, in August or September, 1920, and that Jobe told him that defendant in error had had an analysis of the water made and found that it contained typhoid germs, but that he did not say what water was analyzed. Mr. Jobe testified that the company had an analysis of the water of a well other than the factory well made after August 1, 1920, but because of objections was not permitted to state what water was analyzed or the result of the analysis. Specimens of the water from the factory well taken in the first part of August, 1920, on analysis were found to contain colon bacilli. The analysis for colon bacilli showed "2 plus." The rec-

ord shows that two families used the water of the Shimkus well during the year 1920 and for two years prior thereto, and that no member of these families during that time had typhoid or para-typhoid fever.

All of the employees used the women's washroom several times a day. During the summer the time for lunch was shortened to thirty minutes so that they might quit work earlier in the afternoon, and during this time the women and girls brought their lunch to work and ate it in the factory. Towels were supplied in the washroom. It appears, however, that but two clean towels were furnished every second day. These towels were not large and became very dirty before being replaced with clean ones. They were often found on the floor of the washroom, where they had fallen from the nails on which they were hung or had been thrown on the floor. About the middle of July, 1920, the employees of the factory began to take sick with typhoid or para-typhoid fever, and between July 15 and the middle of August from thirty-eight to forty-one of the employees in the factory became sick with one of those diseases. No cases of typhoid or para-typhoid fever in Westville were reported or known to the physicians testifying, in July or August, 1920, except those cases of the employees of defendant in error. In September or October there were two or three cases of the disease in the families of employees of defendant in error who had had the disease.

Westville is a village having from 2500 to 3000 inhabitants. It has no waterworks or sewage disposal system. The largest sewer there is a storm sewer from three to four blocks long, extending along Main street north and south and then running east a short distance and emptying into an open ditch. One school building had its outside toilets connected with this sewer so that the overflow would be carried into the sewer. Offensive odors are sometimes given off by this sewer and it is flushed out by the fire department. All the toilets in the village, with few excep-

tions, are common dug privies, usually not very deep and in many instances located near wells used for drinking water. Dug wells, usually not more than twenty feet deep, are used to supply water.

The testimony in the record shows that typhoid fever is contracted by taking typhoid germs into the intestines through the mouth, usually in food or drink, and that probably seventy per cent of the cases of typhoid fever are caused by drinking contaminated water. The period of incubation after the germ is taken into the system is from one to six weeks. The typhoid germs are eliminated from the human body in the feces and urine and from them transmitted to another person or persons. Para-typhoid fever shows practically the same symptoms as typhoid but is usually not so severe. It runs about the same course. Some of the medical testimony is to the effect that paratyphoid is caused by an excess of colon bacilli in the intestines, and all the medical testimony is to the effect that the presence of a large amount of colon bacilli in the intestines is conducive to the development of either typhoid or para-typhoid fever. The physicians who treated the employees of defendant in error during the epidemic diagnosed some of the cases as typhoid fever and some as para-typhoid fever. In all cases the disease ran about the same course, some being more severe than others. Dr. Hickman, who treated deceased, testified that hers was a typical case of typhoid fever. Over objection he was allowed to state that in his opinion she contracted the disease at the factory of defendant in error through the drinking of water, and stated on cross-examination that he based his opinion on the fact that he had practiced medicine in Westville for twenty-five years, and that during that time, up until 1920, there had never been an epidemic of typhoid fever there, and that in July and August, 1920, he treated from fifteen to thirty girls, all employees of defendant in error at its factory, suffering from typhoid fever in different degrees of severity.

Dr. Taylor, witness for plaintiffs in error, testified that he treated eight patients, all employees of defendant in error at its factory, during the epidemic; that he diagnosed the disease as para-typhoid fever; that in his opinion the cases came from a common source, and that when he found that all persons affected were employees of the defendant in error in its factory aforesaid he concluded that the source of infection was at the factory, and that when he learned that all employees drank water there he concluded that the water there was the source of the epidemic.

While there is no specific statement by any witness that the deceased drank water or used the toilet facilities provided at the factory, the evidence is that all the employees drank the water furnished for drinking purposes and used the toilet several times a day, and that about forty out of seventy-five or eighty of those employees contracted typhoid or para-typhoid fever in July and August, 1920. No resident of Westville other than those employees, except as already stated, contracted typhoid or para-typhoid fever during the time aforesaid. It is the law that an award under the Compensation act cannot rest upon conjecture or surmise or upon the choice between two views equally compatible with the evidence. It is the law, also, that it is the province of the Industrial Commission to draw reasonable inferences from evidentiary facts, and that it is not the province of the courts to set aside its findings or award unless manifestly against the weight of the evidence. (*Chicago Daily News Co.* v. *Industrial Com.* 306 Ill. 212; *Great Lakes Supply Co.* v. *Industrial Com.* 309 id. 68; *Keller* v. *Industrial Com.* 302 id. 610.) The decision of the commission in this case that the deceased contracted typhoid fever at the defendant in error's factory through the drinking of water there furnished is not against the manifest weight of the evidence but in our judgment is supported by the weight of the evidence. It is practically certain that all the cases there of typhoid fever were brought about

323-30

through a source of infection common to all the patients and employees, and it matters little whether that common source was foul water that was drunk by them, or by filthy towels or other filthy articles used by them, or by foul conditions that existed at the factory and were peculiar to that working place and found only there, as disclosed by the evidence. The evidence abundantly shows that working at the factory and doing the things there that they were directed to do caused the employees, including the deceased, to contract typhoid or para-typhoid fever, and it is immaterial which of the two diseases was contracted.

The real question in this case is whether or not the death of the deceased can be said to be the result of an accidental injury. This question has really from the evidence in this record been practically decided by the decision of this court in *Christ* v. *Pacific Mutual Life Ins. Co.* 312 Ill. 525, in which case this court decided that typhoid fever may be regarded as accidental if the disease is contracted by accidental means. In that case, and in other cases decided by this court, it was held that an accident may be said to be an unforeseen or unexpected event of which the party's own misconduct is not the natural and proximate cause, and that the result ordinarily and naturally flowing from the conduct of the party cannot be said to be accidental. In the case of *United States Mutual Accident Ass'n* v. *Barry,* 131 U. S. 100, the court held that if a result is such as follows from ordinary means voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means, but that if in the act which precedes the injury, although the act be voluntarily employed, something unforeseen, unexpected, unusual occurs which produces the injury, then such injury has resulted through accidental means. In the *Christ case* it was held that typhoid fever is always a disease, and it is certain under the evidence in this record that it is not an occupational disease, but it was further held in that case that the man-

ner in which the disease is contracted is material in determining whether or not the disease was contracted accidentally or as the result of an accident. This court there approved the holding in two cases decided by other courts, to the effect typhoid fever was a bodily injury accidentally received or suffered by the parties therein named, and a recovery was had in one of the cases under an insurance policy insuring against accidental injury, and in the second case there was a recovery by an employee for an accidental injury under the Wisconsin Compensation act. (*Ætna Life Ins. Co.* v. *Portland Gas Co.* 229 Fed. 552; *Vennen* v. *New Dells Lumber Co.* 161 Wis. 370.) The Supreme Court of Michigan has held in two cases very similar in facts to the instant case, that the contracting of typhoid fever was the result of accident. (*Frankamp* v. *Fordney Hotel,* 193 N. W. 204; *Ames* v. *Lake Independence Lumber Co.* 197 id. 499.) This court also made a similar holding in *Chicago Rawhide Manf. Co.* v. *Industrial Com.* 291 Ill. 616, wherein it was decided that the employee was accidentally injured when he contracted the disease anthrax as the result of his scratching a pimple on his neck and coming in contact with rawhides infected with anthrax bacilli. In this case the deceased intended to drink the water furnished by the defendant in error, but she did not intend to drink polluted water or water contaminated with typhoid germs. The contraction of typhoid fever by the deceased from the drinking of such water was unexpected and not foreseen by her and may therefore be said to be accidental. The evidence in the record is to the effect that it was the water that was contaminated with typhoid germs.

The judgment of the circuit court is reversed and the cause remanded, with directions to the court to enter a judgment confirming the decision of the Industrial Commission.

*Reversed and remanded, with directions.*

Mr. JUSTICE THOMPSON, dissenting.