(No. 21087.—

JULIET ARQUIN, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE COUNTY OF COOK, Plaintiff in Error.)

*Opinion filed June 24, 1932.*

JOHN A. SWANSON, State's Attorney, (HERBERT A. G. WEDEL, and JAMES L. HENRY, of counsel,) for plaintiff in error.

HYMAN SOBOROFF, for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

Dr. Sergius F. Arquin, while on duty as an interne in the contagious ward at the Cook County Hospital, contracted epidemic meningitis, which caused his death. An action was brought by his widow to recover compensation under the provisions of the Workmen's Compensation act. After hearing the evidence an arbitrator recommended an award of $3750. On review the Industrial Commission set aside the award, with a finding that deceased did not receive an accidental injury which arose out of and in the course of his employment. The court below, upon a writ of *certiorari*, set aside the decision of the Industrial Commission and entered an order finding that the earnings of deceased during the year next preceding the injury were $2700; that the average weekly wage was $51.92; that deceased left surviving a widow, Juliet Arquin, whom he was under legal obligations to support and who is entitled to receive from plaintiff in error an award of $3750, payable $14 per week for a period of 267 weeks and one week at $12, as provided by paragraph (*a*) of section 7 of the Workmen's Compensation act, and that there had accrued on the award the sum of $1848 to the 19th day of June, 1931, the date of the order. The case is here on writ of error.

It is not disputed that the deceased and plaintiff in error were subject to the provisions of the Workmen's Compensation act. There is also no dispute concerning the evidence. Arquin had served as an interne from January 1, 1928, to December 8, 1928, the date of his death. On December 1 he was assigned to the contagious ward, and from

then until December 6 he treated contagious diseases, particularly epidemic meningitis cases. On each day of that period he made spinal punctures in treating patients suffering from epidemic meningitis and attended one especially virulent case of that disease. On December 6 he complained of a sore throat and the next day was seized with chills. Three attending physicians diagnosed his case as epidemic meningitis. He died during the afternoon of December 8.

It was stipulated by counsel for both parties before the Industrial Commission that the earnings of the deceased should be based upon $50 a month and room and board, making $90 a month, or $1080 a year. In view of this stipulation it is not necessary for us to consider whether the evidence supports the award entered by the circuit court. The finding of the circuit court that deceased earned $2700 during the year next preceding the injury was erroneous in view of the stipulation above referred to. But the result is the same, because, under the law in force at the time of the injury, (Smith's Stat. 1927, chap. 48, par. 144, sec. 7a, p. 1334,) the widow would be entitled to "a sum equal to four times the average annual earnings of the employee, but not less in any event than $1650 or not more in any event than $3750," etc. It will therefore be seen that if the widow is entitled to any compensation, the stipulated annual earnings of her husband entitled her to the maximum award of $3750.

The contention is made that epidemic meningitis contracted by Arquin was not an accidental injury for which compensation may be allowed. The evidence is undisputed that epidemic meningitis is highly contagious and that Arquin was continuously engaged in the treatment of patients suffering from that disease, every day from December 1 until December 6, when he contracted the disease himself. It seems clear that the origin of his illness and death arose while he was performing his duties in the regular course

of his employment. The infection constituted his injury, and it occurred some time between the first and the sixth days of December. One of the staff physicians at the hospital testified that Arquin made spinal punctures on patients suffering from epidemic meningitis, each day between December 1 and December 6, and that it was thought that he contracted the disease from attending one especially virulent case then under his care. The specific time when the meningitis germ entered the body of the deceased is, of course, unascertainable, but since he was in constant contact with this dread disease for six days until he himself was stricken, the evidence seems reasonably sufficient to support a finding that he died as a result of an accidental injury arising out of and in the course of his employment. (*Christ* v. *Pacific Mutual Life Ins. Co.* 312 Ill. 525; *Hood & Sons* v. *Maryland Casualty Co.* 206 Mass. 223; *Matthiessen & Hegeler Zinc Co.* v. *Industrial Board,* 284 Ill. 378.) Here the proof clearly shows that Arquin's death was the proximate result of the accidental injury—*i. e.,* his infection with meningitis a few days earlier. This case is therefore to be distinguished from those cases where the connection between the death and accidental injury is remote and difficult to trace as to time and place of origin.

Since it is not denied that Arquin contracted epidemic meningitis while employed by plaintiff in error, the only remaining question is whether in this case it was an "accidental injury" within the proper meaning of that term. The words "accident" and "accidental injury" as used in the Compensation act are not technical, legal terms. Things which happen in the course of the employment unexpectedly and without the affirmative act or design of the employee, resulting in injury to him, may safely be said to cause accidental injury. (*Peru Plow Co.* v. *Industrial Com.* 311 Ill. 216.) An "accident" has been defined by the English courts in compensation cases as "any unexpected personal injury

resulting to the workman in the course of his employment from any unlooked-for mishap or occurrence arising out of the employment." (*Fenton* v. *Thorley & Co.* 5 B. W. C. C. 1.) As used in our Compensation act, the words "accident" and "accidental injury" are meant to include every injury suffered in the course of the employment for which there was an existing right of action at the time the act was passed. The act likewise is intended to extend the liability of the employer to make compensation for injuries for which he was not previously liable and to fix the limit of such compensation. (*Baggot Co.* v. *Industrial Com.* 290 Ill. 530; *Matthiessen & Hegeler Zinc Co.* v. *Industrial Board, supra.*) If an injury is a result such as follows from ordinary means voluntarily employed and in a not unusual or unexpected way it cannot be called an injury effected by accidental means, but if in the act which precedes the injury, though such act be voluntarily employed, something unforeseen or unexpected or unusual occurs which produces the injury then such injury has resulted through accidental means. (*Rissman & Son* v. *Industrial Com.* 323 Ill. 459; *United States Mutual Accident Ass'n* v. *Barry,* 131 U. S. 100.) A rule frequently announced by this court is, that to be within the purview of the Compensation act the causative danger to the employee must be peculiar to the work, must have its origin in some risk of the employment which, though not seen or appreciated at the time, may after the injury reasonably be seen to have been incidental to it. The injury to the employee must occur while the employee is performing some act of his employer in the course of his employment or incidental to it. *Triangle Auto Painting Co.* v. *Industrial Com.* 346 Ill. 609; *Jefferson Printing Co.* v. *Industrial Com.* 312 id. 575; *Boorde* v. *Industrial Com.* 310 id. 62; *Weis Paper Mill Co.* v. *Industrial Com.* 293 id. 284; *Edelweiss Gardens* v. *Industrial Com.* 290 id. 459; *Fairbank Co.* v. *Industrial Com.* 285 id. 11.

In *Christ* v. *Pacific Mutual Life Ins. Co. supra,* the action was on an accident policy, and the question was whether typhoid fever, which the insured contracted through drinking impure water, was due to an accident. Water containing typhoid germs had through a leaking cut-off in the pipes become mixed with the drinking water supplied to the place of the employment of the deceased by the city water system. It was there pointed out that an injury may be as readily occasioned by disease as by a blow and such disease accidentally acquired may be an accidental injury, and this although drinking the water infected with typhoid germs be a voluntary act. It was held that while the deceased intended to drink the water, such act nevertheless caused an injury unforeseen, unexpected and extraordinary and so was an accident. In *Chicago Rawhide Manf. Co.* v. *Industrial Com.* 291 Ill. 616, the contracting of anthrax was held to be an accidental injury, where a workman handling hides infected with the germs of such disease broke open a pimple on his neck and thus became infected. In *Healey* v. *Mutual Accident Ass'n,* 133 Ill. 556, this court held that the voluntary drinking of a liquid which, unknown to the deceased, contained poison, was an accidental injury. In *Vennen* v. *New Dells Lumber Co.* 161 Wis. 370, compensation was awarded for typhoid fever as being due to an accidental injury, under the Compensation act of that State. The Supreme Court of Michigan in *Frankamp* v. *Fordney Hotel,* 193 N. W. 204, and *Ames* v. *Lake Independence Lumber Co.* 197 id. 499, held that typhoid fever as contracted in those cases was the result of an accident.

In our judgment, when Arquin contracted epidemic meningitis and died therefrom he died as a result of an accidental injury arising out of and in the course of his employment as interne in the Cook County Hospital. While the award of the circuit court was improperly based upon evidence of annual earnings in excess of the amount stipulated, the latter amount ($1080) was sufficient to entitle the

widow to the award of $3750 provided by the statute then in force.

The judgment of the circuit court as to the amount of the award and the manner of its payment is therefore affirmed.

*Judgment affirmed.*