ILLINOIS EMERGENCY RELIEF COMMISSION, No. 23.

HARRY K. STEELMAN, Claimant vs. ILLINOIS EMERGENCY RELIEF COMMISSION, Respondent.

*Opinion filed July 1, 1937.*

ADVISORY OPINION BY MR. JUSTICE YANTIS.

*To the Illinois Emergency Relief Commission:*

Pursuant to your request for an Advisory Opinion, based upon the attached statement of facts submitted by you in the matter of the claim of *Harry K. Steelman* vs. *Illinois Emergency Relief Commission,* the following Opinion is rendered, based upon the aforementioned statement. From same it appears that claimant resides in Springfield, Illinois and was employed to work as a music and dramatic teacher on Project No. 1513, inaugurated by the Illinois Emergency Relief Commission as a part of the Civil Works Educational Service. In connection with his activities, he with three other teachers, directed and supervised the work of six hundred fifty (650)

transient men who were housed in the Springfield Service Bureau. Classes were held twice a day from Monday to Friday of each week. On February 1, 1935 claimant, under instructions from his Superintendent, was engaged in directing a dramatic play for the transient men. About thirty-five transients took part in the festivities. One of the entertainers, name unknown, coughed a great deal. A few days after the entertainment he and his family left Springfield and although the State Health Department attempted to locate him throughout Missouri, Kentucky and Illinois, no later trace of him has been found.

The next day after the entertainment two residents of Springfield who had sat near the unknown transient and the claimant herein, Harry K. Steelman, were all stricken with spinal meningitis.

The statement discloses that prior to that date spinal meningitis carriers had been brought to the camp, and claimant predicates his claim upon the theory that these people and the unknown transient were carriers of spinal meningitis germs, and that these germs were communicated to the later victims from droplets of excretions from the nose and throat of such persons. The following appears from the statement of Dr. W. H. Tucker, Assistant Epidemiologist, in a report to Dr. Jirka, Director of Public Health:

"When the investigation was first started we were not sure that anyone in connection with the Transient Bureau had anything to do with the outbreak, but subsequent developments indicated that some one in the shelter most likely was the source of the first cases * * * when cultures were made from the throats of three hundred men who were thereafter quarantined in the transient camps at Springfield it was found that four of them were carriers of these germs. No carriers were found in a group of more than one hundred townspeople who had attended the program. The carriers were isolated and placed under medical treatment, and their carrier condition was overcome in one week * * * The quarantine of the two shelters and the isolation of the carriers was effective in checking the outbreak in the Federal Transient Bureau and no new cases have appeared in the shelters since that time."

This is decidedly a borderline case. The claimant herein was in attendance at such camp because of his duties. Claimant and respondent at the time of the former's employment were both within the terms of the Workmen's Compensation Act and bound thereby. Do the facts disclose "an injury resulting from an accident which arose out of and in the course of plaintiff's employment?" No accident in the common

acceptance of the term is shown to have occurred, but under certain circumstances spinal meningitis, incurred in the course of the performance of one's employment, has been held to constitute an accidental injury.

In the case of *Arquin* vs. *Ind. Comm.*, 349 Ill. 220, we find that Dr. Arquin, while on duty as an interne in the Contagious Ward of the Cook County Hospital, contracted epidemic meningitis which caused his death. In submitting a claim in that case the widow contended that epidemic meningitis was an accidental injury for which compensation should be allowed. It was there said,

"The evidence is undisputed that epidemic meningitis is highly contagious and that Arquin was continuously engaged in the treatment of patients suffering from that disease, from December 1st to December 6th, when he himself contracted the disease. The origin of his illness and death arose while he was performing his duties in the regular course of his employment. The infection constituted his injury * * * The specific time when the meningitis germ entered his body is unascertainable, but since he was in constant contact with this dreaded disease for six days until he himself was stricken, the evidence seems reasonably sufficient to support a finding that he died as a result of an accidental injury which arose out of and in the course of his employment * * * The proof clearly shows his death was the proximate result of the infection with meningitis a few days prior. This case is therefore to be distinguished from those cases where the connection between the death and accidental injury is remote and difficult to trace as to time and place of origin."

The following views were expressed in *Rissman and Son* vs. *Ind. Comm.*, 323 Ill. 459:

"Typhoid fever has been regarded as accidental if the disease is contracted by accidental means; that an accident may be said to be 'an unforeseen or unexpected event of which the party's own misconduct is not the natural and proximate cause,' and that the result ordinarily and naturally flowing from the conduct of the party cannot be said to be accidental."

From the foregoing decisions it appears that meningitis, contracted under certain conditions may be said to constitute an accidental injury, as used in the Workmen's Compensation Act.

As the statement herein submitted however discloses as a positive fact that carriers of the spinal meningitis germs were found to be present in the group of men among whom claimant worked in the course of his employment, and as tests made of more than one hundred townspeople who were not residents of such Transient Camps, disclosed no meningitis car-

rier among them, we believe the record sufficiently shows that claimant contracted the disease in the course of his duties and that same constituted an accidental injury which arose out of and in the course of his employment.

Plaintiff's wages appear to have been Seventy-five ($75.00) Dollars per month at the time of his injury, or on the basis of Seventeen and 30/100 ($17.30) Dollars per week, of which Fifty Per Cent (50%) would be Eight and 65/100 ($8.65) Dollars. He remained in the hospital from January 26, 1935 until the 28th day of February, 1935 and was thereafter taken to his home, where he was bedridden for the following six weeks. While he was employed to some extent thereafter, the statement of Dr. Franklin Maurer, appearing in the record, states that claimant's temporary disability terminated on or about December 1, 1935. An allowance at the rate of Eleven Dollars per week for forty-four (44) weeks to December 1, 1935 based upon 50% plus allowance on account of one child under sixteen years, would amount to Four Hundred Eighty-four ($484.00) Dollars. The record discloses that claimant is now employed by the Old Age Assistance Service at One Hundred Sixty ($160.00) Dollars per month, which is more than double the wages he was receiving at the time of his injury, and no award can be justified for any permanent disability. The only award that appears to be possibly justified is the allowance for temporary total disability, in an amount not to exceed Four Hundred Eighty-four ($484.00) Dollars. Your Commission would apparently be justified in paying such latter sum to claimant, but not in paying claimant the sum of Five Hundred Eighty-five ($585.00) Dollars, indicated in your statement as being the amount which claimant and his attorney have offered to accept in full settlement of his claim.

As it appears that the claim now under consideration is the same as that now filed in the Court of Claims under the title of *Harry K. Steelman* vs. *State of Illinois,* No. 2744, any settlement of the present claim should be conditional upon the dismissing of the latter entitled cause, and settlement should be made from any funds now held by the Illinois Emergency Relief Commission and allocated for the payment of such claims.