(Nos. 26329, 26330.—)
PERMANENT CONSTRUCTION COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(LORRAINE M. BROWN *et al.*, Defendants in Error.)—PERMANENT CONSTRUCTION COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(EDWARD A. ST. PETER, Defendant in Error.)

*Opinion filed June 11, 1942—Rehearing denied September 15, 1942.*

WILSON and GUNN, JJ., dissenting.

PEREGRINE & BRUEGGER, for plaintiff in error.

FRANK W. CURRAN, DONALD GRAY, and SAMUEL H. SHAPIRO, for defendants in error Lorraine M. Brown *et al.*; ORR, VAIL, LEWIS & ORR, GREENBERG & SACHS, and SHARL B. BASS, (LOREN E. LEWIS, DANIEL D. CARMELL, and JACK L. SACHS, of counsel,) for defendant in error EDWARD A. ST. PETER.

Mr. JUSTICE STONE delivered the opinion of the court:

These are cases consolidated here, for the purpose of opinion, and brought to review the judgments of the circuit court of Kankakee county confirming the decisions of the Industrial Commission which awarded compensation in each case. Defendant in error, Lorraine M. Brown, widow of Harold Glenn Brown, on her own behalf and on behalf of her minor child, and defendant in error Edward A. St. Peter, in his own behalf, filed applications for awards. The sole question involved in each case is whether typhoid fever, contracted by Brown and St. Peter, employees of plaintiff in error, and from which Brown died, arose out of their employment, within the meaning of the Workmen's Compensation act.

The facts were stipulated in the Brown case and evidence was heard in the St. Peter case. The facts in each case are substantially the same except as above noted. Brown and St. Peter were employed by plaintiff in error construction company in the construction of buildings, under a contract plaintiff in error had with the State of Illinois, on the grounds of the Manteno State Hospital. The hospital grounds consist of about 1000 acres and the buildings thereon house some 5600 inmates, 800 employees and attaches, and 20 doctors. Plaintiff in error and other contractors employed some 400 to 450 workers who worked

on the premises eight hours a day for five days a week. Visitors, strangers, taxi drivers and tradesmen entered the grounds and some of the buildings every day of the week. The only drinking water available on the grounds was from a waterworks system maintained by the State of Illinois for use by those living upon and who came upon the grounds of the institution. It is conceded that as a result of contamination in the general water supply, a typhoid epidemic occurred at the institution. About 391 of the inmates, 60 employees and attaches of the institution, certain employees of the plaintiff in error, and five known visitors to the institution contracted typhoid fever. Brown and St. Peter were among the employees of plaintiff in error and they contracted the disease from drinking the water. The water Brown and St. Peter drank was taken from the hydrants and conveyed to the employees of plaintiff in error in buckets, by a water boy. There is no contention that the water buckets or the vessels from which the employees drank contributed to the contamination of the water.

Typhoid fever is accidental if the disease is contracted by accidental means. (*Rissman & Son* v. *Industrial Com.* 323 Ill. 459; *Christ* v. *Pacific Mutual Life Ins. Co.,* 312 id. 525.) In the *Christ case* it was held that the manner in which the disease is contracted is material in determining whether the disease was contracted as the result of an accident. In that case this court cited with approval two cases decided by courts of other jurisdictions, holding that typhoid fever was a bodily injury accidentally received or suffered by the parties therein named. A recovery was had in one of the cases under an insurance policy insuring against accidental injury. (*Aetna Life Ins. Co.* v. *Portland Gas Co.* 229 Fed. 552.) In the second case compensation was awarded an employee, the court holding that under the facts of that case an accidental injury under the Workmen's Compensation act had occurred. (*Vennen* v. *New Dells Lumber Co.* 161 Wis. 370, 154 N. W. 640.)

In *Frankamp* v. *Fordney Hotel,* 193 N. W. 204, and *Ames* v. *Lake Independence Lumber Co.* 197 id. 499, the Supreme Court of Michigan held that the contracting of typhoid fever under the conditions there shown was the result of accident. *Hood & Sons* v. *Maryland Casualty Co.* 206 Mass. 223, 92 N. E. 329, was a suit upon an employer's liability policy to recover damages which the employer had been compelled to pay to a hostler employed in its stables who had the care of horses which were afterward found to have been suffering from glanders and were killed. Barry, the employee, was directed to assist in cleaning up the stalls. He was subsequently attacked by the disease and brought an action against the employer for negligently putting him to work on the horses and exposing him to the disease. He recovered a judgment against the employer who brought suit against the insurance company and recovered the amount which it was compelled to pay. It was held that the disease from which the employee suffered was due to an accident. The court said: "The intention is, as has been said, to afford full protection and indemnity to the assured. Any accident that causes bodily injury in any way is included. Bodily injury is more commonly associated perhaps with physical force of some sort, but in the absence of anything in the policy limiting it to that we do not see how or why it can or should be so restricted. A liability growing out of an accident which results in infecting the workman with a loathsome and dangerous disease and thereby causes him great and perhaps lasting physical injury would seem to be as much within the spirit and intent of the contract as if the injury had been caused by a blow or some other equally obvious manifestion of force."

Under the stipulation in the Brown case and the evidence in the St. Peter case before us, the arbitrator and the commission found that the employees, by drinking the water containing typhoid bacilli, furnished them by plaintiff

in error, suffered accidental injuries in the course of their employment. That finding is not contested. The question here is, Did the accidental injury to each employee arise out of the employment? Determination of the question whether an injury arises out of the employment is one which is frequently attended with much difficulty,—not so much in the determination of the rule as in its application to the facts under consideration. This court has in a number of cases announced the rule to be that an injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident to the work and as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment. The rule excludes an injury which cannot be fairly traced to the employment as a contributing proximate cause. A hazard to which the workman would have been equally exposed apart from the employment is not compensable. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence. (*Abell Chevrolet Co.* v. *Industrial Com.* 370 Ill. 460; *Borgeson* v. *Industrial Com.* 368 id. 188; *Great American Indemnity Co.* v. *Industrial Com.* 367 id. 241; *Consumers Co.* v. *Industrial Com.* 324 id. 152; *Gooch* v. *Industrial Com.* 322 id. 586; *Alzina Construction Co.* v. *Industrial Com.* 309 id. 395; *Central Illinois Public Service Co.* v. *Industrial Com.* 291 id. 256.) Though the risk be one common to the general public, if the employee was, by reason of his employment, exposed

to it to a greater degree than other persons, injury arising therefrom is compensable, but risks to which all persons similarly situated are equally exposed and not traceable in some special degree to the particular employment, are excluded. *Central Illinois Public Service Co.* v. *Industrial Com. supra;* Corpus Juris, Treatise on Workmen's Comp. Acts, 77.

In *Mueller Construction Co.* v. *Industrial Board,* 283 Ill. 148, it was said: "It was not the intention of the legislature to make the employer an insurer against all accidental injuries which might happen to an employee while in the course of the employment, but only for such injuries arising from or growing out of the risks peculiar to the nature of the work in the scope of the workman's employment or incidental to such employment, and accidents in which it is possible to trace the injury to some risk or hazard to which the employee is exposed in a special degree by reason of such employment. Risks to which all persons similarly situated are equally exposed and not traceable in some special degree to the particular employment are excluded."

In certain English cases it was held that, under the facts there shown, the employment could not fairly be said to create or intensify the risks that arose from natural causes so as to expose the employee to some peculiar or extraordinary danger, and so the accident did not arise out of the employment. Those were cases of injuries suffered by reason of exposure to the elements. In *Warner* v. *Couchman,* 1 K. B. 351, a baker, in making his rounds delivering bread to his employer's customers on a cold day, contracted a chill, followed by illness. It was held that he was not injured by an accident arising out of the employment and so was not entitled to compensation. That conclusion was based on the fact that there was nothing in the nature of his employment which especially exposed him to the risk of cold to which any person working in the open was ex-

posed on that day. In *Kelly* v. *Kerry County Council*, I B. W. C. C. 194, a van driver's hand was affected by cold while driving on a winter afternoon, and it was held that such injury did not arise out of the employment. Also in *Robson, Eckford & Co.* v. *Blakely*, 5 B. W. C. C. 536, a plumber was overcome by heat while attending to his work in a trench in the open air during a hot July day, and he was held to have been subjected to only such risk as was common to those in that neighborhood on that day.

We believe the reasonable rule applicable to the cases before us to be that if these employees, by reason of their employment were exposed to an intensified or greater risk of contracting typhoid fever than the risk to which the public in that vicinity was exposed, or if their employment necessarily accentuated the general hazard of contracting that disease, which increased hazard contributed to the injury, it was an injury arising out of the employment although unexpected and unusual. While the risk of contracting typhoid fever from drinking water taken from a public water supply is a risk to which all people in the same locality are subject, independent of employment, yet the circumstances of a particular employment may make the danger of contracting the disease a special or intensified risk, to which risk the public generally is not subjected. If such a situation is proved by evidence, the typhoid fever may be then said to have been an accidental injury arising out of the employment. (*Central Illinois Public Service Co.* v. *Industrial Com. supra.*) Under the rules above announced, to sustain the award it must appear from the facts that the employment of Brown and St. Peter made the danger of contracting typhoid fever an exceptional risk.

*Rissman & Son* v. *Industrial Com. supra*, cited by counsel, does not solve the question here. In that case the only question presented and decided was whether contracting of typhoid fever was an accidental injury. The question whether the accident arose out of the employment was not

presented or decided. *Vennen* v. *New Dells Lumber Co. supra,* differs from these cases in one particular. In that case the water was furnished to the employee by the employer through water mains in the employer's plant. The employee contracted typhoid fever from the effects of which he died. The action was for damages on account of the accidental death of plaintiff's intestate due to typhoid fever contracted while deceased was in the employ of the defendant. The question there was whether the employee's death was proximately caused by accident while he was performing services growing out of and incidental to the employment. It was there held that contracting typhoid fever by drinking water furnished by the employer was, under the Workmen's Compensation act of Wisconsin, an accident occurring while the employee was performing services growing out of and incidental to his employment and was an injury within the contemplation of the statute.

In *Ames* v. *Lake Independence Lumber Co.* 197 N. W. (Mich.) 499, an employee of an independent contractor was doing work for the defendant lumber company under a contract. The employee contracted typhoid fever within the incubation period after finishing the work under the contract. The Industrial Commission held that Ames, the employee, suffered an industrial accident as an employee of contractor Keller while in the performance of his contract with the lumber company and was under the Workmen's Compensation act of that State, which made the principal liable for industrial accidents sustained by employees of a contractor when engaged in the performance of his contract. In that case the employees drank water from a pipe emptying into a horse trough, located some 400 feet from where they worked. After eight or nine days the barn boss happened to see one of the men drinking from the pipe and told him the water was not fit to drink. No laboratory test showing the water to contain typhoid bacilli was proved and no evidence was offered to show that any-

one had previously contracted typhoid fever or otherwise suffered ill effects from drinking the water. In reversing the finding of the commission the Supreme Court of Michigan said: "But assuming there is evidence from which the commission might infer plaintiff contracted typhoid fever in drinking water from the pipe, it is not shown to have been an industrial accident caused by exposure to some special hazard incidental to or arising out of his employment. Defendant did not furnish him his water for the purpose of, or in connection with, his work, or in fact know that he was drinking it. It was not at or in view of the place of his employment. He found it some distance from there in a barn, in a condition indicating it was put there to water animals, and helped himself to it."

In *Frankamp* v. *Fordney Hotel*, 193 N. W. (Mich.) 204, a waitress employed in the hotel contracted typhoid fever from drinking water furnished her by the hotel from an artesian well on its premises. The Industrial Commission of Michigan entered an award in favor of the employee for an accidental injury arising out of and in the course of her employment. The Supreme Court affirmed the finding of the Industrial Commission.

Under the facts of this case as stipulated or conceded it cannot be denied that all who drank water on the grounds of the Manteno State Hospital were liable to contract typhoid fever. Unless it can be said that employees of plaintiff in error were subjected to a greater risk of contracting that disease because of their employment than was the public generally, the disease suffered by Brown and St. Peter cannot be said to have arisen out of their employment. On the other hand, if the act of plaintiff in error in furnishing to its employees water which contained typhoid bacilli, can fairly be said to have increased or intensified the risks to which the public was subjected, so as to expose its employees to an extraordinary or peculiar danger to which the public generally was not equally ex-

posed, the disease arising from drinking such water was an accidental injury arising out of the employment. *Frankamp* v. *Fordney Hotel, supra.*

In the cases before us the employer, probably to conserve the time of its employees, elected to furnish water for drinking purposes to its employees. It obtained the water from the water system of the Manteno State Hospital, transferred it from the mains of that water system to buckets, and carried it to its employees at the places where they were working, for the purpose of supplying their need for drinking water. By so doing it must be said to have furnished the water in connection with its employees' work. The water it chose to thus furnish was contaminated. Brown and St. Peter sustained accidental injuries through drinking it at the place of and in the course of their employment. By furnishing drinking water to its employees plaintiff in error put itself in the same position it would have occupied had it furnished the water from its own wells. (*Frankamp* v. *Fordney Hotel, supra.*) It was to its advantage to furnish drinking water to its employees at the place where they were employed, rather than to permit employees to leave their work and place of employment to go to a tap of the water supply on the hospital grounds. When plaintiff in error elected to furnish water to its employees, it was incumbent on it to furnish water free from contamination. Under these facts the risk to its employees became a special hazard.

Though the Workmen's Compensation act does not make an employer an insurer of the safety of his employees, (*Great American Indemnity Co.* v. *Industrial Com. supra,*) yet, when an employer elects to furnish its employees with drinking water, it is bound to see and know that the water furnished is free from deleterious substances, liable to cause accidental injuries to its employees. Our conclusion is that Brown and St. Peter, in drinking typhoid-bacilli-contaminated water during the hours of their employment,

furnished them by their employer, received accidental injuries which arose out of and in the course of the employment. The judgments of the circuit court confirming the awards were right and are affirmed.

*Judgments affirmed.*

WILSON and GUNN, JJ., dissenting.