Allen, J.
 

 This case arises, out of the following facts, which are shown by the record:
 

 On July 4, 1928, Harry L. Fenton, the assured, was seen about 7:30 o ’clock in the evening in his automobile in a ditch at the side of the public highway leading into Monroeville, Ohio. At that time one F. E. Seely and "Wallace Mehring, who were acquainted with Harry L. Fenton, drove by Fenton on the highway in question, and noticed that his car was in the ditch, standing upright on its wheels. Fenton was seated in the car, leaning over, apparently working with the clutch. Mehring and Seely stopped with the purpose of assisting Fenton, but Fenton motioned with his hand, and Seely and Mehring assumed from Fenton’s gesture that he did not need their assistance, and therefore continued their
 
 *99
 
 journey. This was the last time at which Mr. Fenton was seen conscious. About 10 o’clock in the same evening, Benjamin Ackerman, a farmer who lived in the neighborhood, saw the automobile in the ditch, went over to it, found the windshield wiper running, and found Fenton fallen partially out of the car, with his head on the running board and one of his legs on the front seat of the car. Fenton was unconscious. Ackerman released Fenton from his position with considerable difficulty, as the door was “kind of pressed against his body.” In fact Ackerman was compelled to call for help from a passerby. Fenton died at the end of four days, having been unconscious during all of the period since his being discovered by Ackerman. An autopsy developed the fact that a blood vessel had burst in Fenton’s head, opposite his right ear, and that this rupture of the blood vessel was the immediate cause of his death. No bruises were found upon the body.
 

 The record also showed that the shifting brake in the transmission in Fenton’s car was out of place immediately after the accident, and that the gears were locked, throwing the car into reverse gear; that it would hence be necessary for the driver, in order to locate the difficulty with the shifting brake, when he saw the handle was not operating, to go underneath the boards of the car to reach that particular part of the mechanism.
 

 It is claimed by the insurance company that the death was due entirely to a stroke of apoplexy, and that Fenton’s fall resulted from the stroke. It is in brief the claim of the plaintiff in error that the decedent fell accidentally and that the fall resulted in the rupture of the blood vessel. In this connection
 
 *100
 
 the evidence of Ackerman, who found Fenton in the automobile, is material. It reads:
 

 “Q. And you say the weight of his body was on his head? A. Yes, pressing down.
 

 “Q. Yes, pressing down on the running board? A. Yes, sir.
 

 “Q. And was it one leg or two legs on the seat? A. Well, if I remember right, there was one.
 

 “Q. One, and now about the door, you say the door was jammed in on his body? A. Yes, holding him back of it, his shoulder, pressing him. * * *
 

 “Q. That position you found him in, you did make the statement you called that a painful position? A. Yes. * * *
 

 “Q. Well, did you try to pull him out of the car yourself, or was he kind of fastened in there, or not? A. Yes, that is, I tried it myself, and that is why I stopped that car.
 

 “Q. And you couldn’t get him alone? A. No, sir.
 

 “Q. Where was he fastened that you couldn’t get him alone? A. Right at the door, and leaning off that way on the running board, the door was holding him against the shoulder, had him kind of bent down.
 

 “Q. Held him down? A. Yes.
 

 “Q. Then when you couldn’t unfasten him yourself, and got this other man to .assist you, then you both got him loose? A. Yes, one toolc hold of the door, and the other pulled him up. * * *
 

 “Q. This door, was there anything holding this door, or pushing it or against it, rested against it, which didn’t allow it to swing clear open as it ordinarily would? A. Only his body.
 

 “Q. Well, his body was between the open door
 
 *101
 
 and the side of the door post, wasn’t it? A. No, no; his body was under the door, and on the running board.
 

 “Q. His body of course, was down on the running board? A. Yes, sir.
 

 ££Q. I understand that, and then his body — but that didn’t keep the door shut, that kept it open, didn’t it? A. Oh, yes.
 

 ££Q. The door wasn’t pushing his body, was it? A. Oh, yes.
 

 ££Q. How and where? A. Pressing down on it.”
 

 When found by Ackerman, Fenton’s face was black or blue, and there was some frothing at the mouth.
 

 The testimony of the physicians was conflicting. One physician testified, in substance, that the rupture of the blood vessel could have been caused by an accidental fall. One of the experts testified that, if there had been a stroke of apoplexy before the fall, Fenton would have “just slumped forward,” and not plunged forward.
 

 Under these circumstances, the jury was confronted with a close question of fact. The position of Fenton, with his head bent under his body so that the weight of the entire body was almost resting on the side of his head and neck, might give rise to a reasonable inference of a violent fall. On the other hand, it might give rise to a reasonable inference of a stroke, resulting in a fall. It is the claim of the insurance company that under these circumstances the court was compelled to direct a verdict on the ground that there was no evidence of accident or of external and violent injury.
 

 We cannot agree with this contention. Every case
 
 *102
 
 cited by the defendant in error can be distinguished from this record by the peculiar position of the body. The position of Fenton’s body was some evidence of a violent fall, and this, combined with the testimony of the physician, was some evidence of the existence of a fall which ruptured the blood vessel. Reasonable minds might differ as to the conclusion to be drawn from these facts, but the question, such as it is, is entirely a question of fact.
 

 The question whether or not the insured has suffered such an injury as will entitle him to recover is for the jury, where there is not snch a clear lack of evidence of the injury as to warrant a dismissal of the complaint.
 
 Clarkson
 
 v.
 
 Union Mutual Casualty Co.,
 
 201 Iowa, 1249, 207 N. W., 132;
 
 National Life & Accident Ins. Co.
 
 v.
 
 Braswell,
 
 209 Ky., 165, 272 S. W., 413;
 
 Dunwoody
 
 v.
 
 Royal Indemnity Co.,
 
 218 Mich., 358, 188 N. W., 498;
 
 Metropolitan Life Ins. Co.
 
 v.
 
 Contie, Admr.,
 
 119 Ohio St., 37, 162 N. E., 110.
 

 The court, prior to the retirement of the jury, charged the jury in terms requested by and favorable to the insurer, and the jury found against the contention. Under the law of this state we do not interfere with that conclusion.
 

 Judgment of the Court of Appeals reversed, and judgment of the court of common pleas affirmed.
 

 Marshall, O. J., Kinkade, Robinson, Matthias and Day, JJ., concur.
 

 Jones, J., concurs in the syllabus, but not in the judgment.