By the Court.
 

 This case in the trial court was an action brought by the administratrix of the estate of a deceased person against the plaintiff in error here to recover upon an accident insurance policy issued by the plaintiff in error about two months prior to the death of the insured. The policy was valid in every respect, and was in full force at the commencement of the action. The administratrix was the widow of the insured, and the duly appointed administratrix of his estate. It was a death case, and the amount recoverable upon the policy, if anything, was $2,000 and interest. There was a verdict and judgment in the trial
 
 *292
 
 court for the full amount claimed. The Court of Appeals affirmed that judgment and the insurance company prosecutes error here.
 

 The parties will be referred to in this opinion as the administratrix, the insured, and the company.
 

 The insured lived at Monroeville, Ohio, about fifteen miles from the city of Sandusky. He was- the owner of an Essex coach automobile, which he drove himself. He owned and operated an automobile garage in Monroeville, for the repair of automobiles, and was an experienced and skillful driver of automobiles.
 

 About three o’clock in the afternoon of July 4,1927, he left his home in his own car, alone, to drive to San-dusky and back, saying to his wife as he started that he would return soon. He was apparently in good health and in normal condition in every respect at that time. He was not again seen or heard from until seven-thirty that evening, at which time he was seen sitting in his automobile at a point on the highway extending from Monroeville to Sandusky, and abput nine miles north of Monroeville. His automobile was headed south, and was then in the ditch which was on the east side of the highway — the left-hand side as he was driving south toward his home. This ditch was about three feet deep, and about twelve feet wide on the bottom. The car was standing in an oblique position across the ditch, all four wheels being on the ground. There was nothing indicating that the car had been tipped over or damaged in any way by having been in collision with any other vehicle. The insured was sitting in the driver’s seat in his car, with his left hand resting on the steering wheel, his body inclined toward the right side of the car, with his head and right arm down near the floor of the car, as if endeavoring to readjust something that was out of order in connection with the transmission gears of the car.
 

 The passing motorists who thus discovered the in
 
 *293
 
 sured in Ms car in the ditch offered to aid him if he desired any assistance. He waved Ms hand, indicating that he did not need aid, and wished them to go ahead, wMch they did.
 

 The next person who saw the insured was a farmer whose home was about 500 feet distant on the same highway. This was about nine o’clock p. m.. The insured at that time had fallen partly out of his car, his head and neck were down on the running board of the car, and the most of his body protruded through the door of the car and was pressing Ms head and neck down on the running board. One leg was on the floor of the car and the other leg was on the front seat of the car. The open door of the car was wedged against the shoulder of the insured in such manner as to make it impossible for one person to remove the insured from his car. By the aid of passing motorists he was removed to the farmer’s home. When thus discovered by the farmer, the insured was unconscious, his face much discolored, and he was frotMng at the mouth. He was taken to his home in Monroeville about midMght, where he was taken care of by his family physician for about four days, when he died without regaining consciousness.
 

 An autopsy performed by a skillful surgeon within a few hours after death disclosed that the insured died from apoplexy caused by rupture of a blood vessel in the brain.
 

 The policy of insurance covered injuries caused by the wrecking of the automobile of the insured, or occasioned by the insured being thrown out of the automobile, and the policy definitely limited liability of the company to these two causes.
 

 It is entirely self-evident that the apoplexy of the insured was not caused by his being thrown out of Ms car. There is not a particle of evidence in the record to sustain this theory of liability. After the car had reached a state of repose in the ditch, it did not
 
 *294
 
 thereafter move at all until it was pulled out of the ditch by another machine, all of which took place after the insured had been seen in the car apparently in a normal condition at seven-thirty p. m., and after he had been removed from the car in an unconscious condition shortly after nine p. m. After the car reached a position of repose, manifestly the insured could not have been thrown out of the car, hence that feature of the policy cannot possibly furnish any basis for a recovery here.
 

 The claim of counsel for the administratrix is that the car was wrecked, and that the wrecking of the car caused the apoplexy, which in turn caused the death of the insured. Counsel for the company contend that the apoplexy was in no way caused by what happened to the gear-shift mechanism of the car, but was in fact caused by the strenuous overexertion and excitement of the insured in his efforts to readjust the derangement of the gear-shift trouble in the car, and that these efforts on the part of the insured were all put forth after the car had reached a state of repose in the ditch, and hence had nothing to do with the wrecking of the car, even if it be conceded that the locking of the gearshift mechanism, by reason of the fact that a worn-out metal frog which formed a part of the gear-shift assembly had fallen out of place so as to lock the gears, so that the car could not, of its own power, go either forward or backward, was in fact a wrecking of the car as contemplated in the terms of the policy, all of which counsel for the company deny. There were no external injuries found on the body of the insured by the examining surgeons, and hence nothing to indicate that any action of the car in any manner or to any extent caused an increase in blood pressure and a rupture of a blood vessel, with apoplexy following and causing the death.
 

 There seems to be no reasonable explanation of the car going into the ditch except that it became un
 
 *295
 
 manageable by reason of tbe derangement of the gearshift assembly, resulting from the misplacement of the overworn metal frog.
 

 When the car got into the ditch, the situation furnished an occasion for strenuous overexertion by the insured, in the heat of the day, to correct the trouble. It is quite impossible to say with certainty just what did take place, as no one was present to witness what did occur. Many facts not known may exist, but they rest wholly in the field of conjecture.
 

 The words in the policy, “by the wrecking of any * * * private motor-driven car, ” present great uncertainty as to the proper scope and meaning of the term “wrecking.” Surely it will not do to say that anything which happens to any part of the mechanism of a car, which prevents the car for the time being from functioning as an automobile, must be held to be a “wrecking” of the car. An obstruction in a vacuum tank, or gasoline feed-line, or a slight injury to either, might quickly and effectively put the car out of commission temporarily, but it would be very untrue to say in such a case that the car had thereby been wrecked. We think the charge of the trial court to the jury on this feature of the case was erroneous and prejudicial.
 

 A companion case, arising out of the same accident, in which the action for recovery was brought against the American Liability Company by the same administratrix as in this case, is found in 123 Ohio St., 97, 174 N. E., 254. The fact in that case which distinguishes it from this is that the policy had in it the provision that liability would arise against the insurance company if the injury occurred “while driving, adjusting or cranking a private passenger automobile.” If that language were in the policy sought to be enforced in this case, we might well sustain the right to recovery by holding that the apoplexy was caused while the insured was trying to adjust the de
 
 *296
 
 ranged gear-shifting assembly of the car. We have, no snch provision in the policy in question.
 

 We are unable to find any evidence in the record tending to sustain the claim of counsel for the administratrix that that which happened to the car caused the apoplexy which in turn caused the death of the insured.
 

 The motion for directed verdict in favor of the company should have been granted. Final judgment for the company, which should have been entered in the trial court, will be entered here.
 

 Judgment reversed and final judgment for plaintiff in error.
 

 Jokes, Matthias, Day, Allen, KiNkade and Stephenson, JJ., concur.