## FEDERAL LIFE INS. CO. v. RALEY.
### No. 4387.

Court of Civil Appeals of Texas. Amarillo.
April 1, 1935.

Rehearing Denied April 15, 1935.

Alfred M. Scott, of Austin, for appellant.

R. P. Moreland, of Plains, and R. L. Graves, of Brownfield, for appellee.

HALL, Chief Justice.

The appellee, Raley, brought this suit in the capacity of surviving husband, sole heir at law and administrator of the estate of his wife, Vera Raley, against appellant, insurance company, to recover $1,500 death benefits, together with 12 per cent. statutory pen-

alties as attorney's fees. The policy which forms the basis of this suit is a limited accident policy, issued by the company upon the life of Mrs. Vera Raley. The sufficiency of the petition is not questioned. It is alleged that Mrs. Raley met her death by external, violent, and accidental means, within the meaning of the policy, on January 22, 1934, while traveling on a state highway in a 1929 model A Ford roadster automobile, in which she was riding with her husband, the appellee.

The pertinent stipulations of the policy pleaded by the defendant in defense are, omitting formal parts, substantially as follows: "Federal Life Insurance Company * * * hereby insures Vera Raley * * * against accidental death * * * resulting, directly and independently of all other causes, from bodily injuries sustained through external, violent and accidental means, for the amounts and in the manner set forth in parts * * * II and III * * * subject to the provisions, conditions and limitations contained in this policy."

Part III relates to injuries sustained by pedestrians. No evidence was introduced upon that feature of the policy; the evidence and charge of the court relating entirely to portions of part II. Part II, relating to "automobile accidents," provides that the company will pay the sum of $1,500 "(b) for loss of life as a result of accident specified in paragraph (a) of this part." Paragraph (a) provides for the payment of said sum if loss of life is "sustained by the wrecking of a four-wheeled automobile of the pleasure type exclusively in which the insured is riding." The policy further contains this definition: "Wrecking or disablement as used in this policy means damage to car or conveyance occurring at the time of injury or death, which damage shall require repair and of which damage there shall be visible mark upon such car or conveyance."

The appellant alleged that the evidence failed to establish the right of appellee to recover under the foregoing terms of the policy.

It was shown that the appellee, Raley, and his wife were, on January 22, 1934, traveling along a public highway in Yoakum county in their 1929 model A, single seat, left-hand drive Ford roadster automobile; the husband sitting on the left-hand side doing the driving. That the car was in good mechanical condition, with the exception that a small screw bolt had become unscrewed and dropped out of its socket, thus unfastening the upper right-hand corner of the lid or "turtleback" which inclosed and covered the luggage compartment at the rear of the car, behind the seat. They had a small pig, weighing about 125 pounds, shut up in the luggage compartment, carrying it to their home. The metal lid or turtleback covering was hinged at its upper right and left hand corners so as to swing open and upward from the bottom by threaded screw bolts about an inch in length. At the center of the lower edge of the metal lid or turtleback there was the usual mechanical hand latch by which the lid could be fastened down and locked at the bottom. It had been fastened at this time before beginning the trip, but, instead of locking the hand bar with the key, Raley had wired the handle to the spare tire rack and had also tied a rope diagonally across the turtleback lid from the upper left-hand corner to the lower right-hand corner.

Appellee and his wife were driving in a general northward direction from the town of Plains toward their farm at a speed of about twenty to twenty-five miles per hour. They were making a right angle turn, the curve in the highway being to the right, when Raley heard a noise in the back end of the car as if the pig was going to escape. He turned his head to the right looking through the small window in the rear of the car top and saw that at the upper right-hand corner or hinges the screw bolt had come out of its socket and that the upper left-hand corner of the lid had slipped to the right and off of its screw bolt so that the top of the turtleback was disconnected from the car and being held only by the wire which fastened the handle to the spare tire rack and by the rope tied diagonally across the lid, causing the lower part of the lid to swing to the side and leaving an opening. The pig had his snout sticking through this crack, which was about three to five inches wide, between the edge of the turtleback lid and the body of the car, trying to force its way out, the lower part of the lid sliding over toward the side of the car. Raley then faced forward and commenced slowing the speed of the car gradually as much as he could without sliding his tires, with the idea of getting out and going back to see that the pig did not escape. So far as the testimony shows, his wife never looked back or otherwise became aware of what was going on. Neither Raley nor his wife said anything about the pig's impending escape. Raley testified that he did not anticipate that his wife would attempt to get out of the car, but that he intended to do so as soon as he stopped. While looking back he

had unintentionally allowed the car to swerve somewhat to the left in the road, so that it was perhaps near the middle of the road. At this point the road was graded about 36 to 40 feet in width, and on account of the sharp curve the road had been banked steeply, sloping upward from the east, or inner, side to the outer side of the curve, to the extent that the right running board was about six inches lower than the left board. That after turning around he was looking straight ahead at the road so as to avoid running over the embankment at the west, or left, side of the road. He was not watching his wife, and did not see her fall or know whether the right door of the car came open accidentally or whether she intentionally opened it and made some move to arise and get out of the car, nor did he know whether she let her foot slip or otherwise lose her balance and fall from the car. He testified that all he knew was that, while he was watching his driving and slowing down the speed, he heard a sound as of the right door opening, heard a gasping sound from his wife, a dull thud as of her body striking the ground on the right-hand side of the car, and upon looking around found she was missing from the seat beside him. That he immediately put on his brakes, stopping the car as quickly as possible, noticed the car door swinging open, got out of the car and for the first time discovered his wife unconscious on her back on the hard-packed surface of the road at the right of where the car had stopped. She was lying with her head westward and her feet eastward, squarely across the road. That the car was not going over five or six miles per hour when she fell. That he did not see her fall and did not know how she happened to fall. That she remained in an unconscious condition for about ten minutes, but partially revived and with his help got back into the car and was taken home. That no one else was in the vicinity at the time of the accident. That she never regained consciousness sufficiently to tell how the accident happened. That the accident occurred about 3 p. m. and she died the next morning about 3 o'clock from concussion of the brain and a fracture in her skull. That there were no external cuts or abrasions on her head or body, except a pair of superficial scratches on her forehead, just over her eyes, which were apparently the result of being cut by her glasses when she fell.

It further appears that afterward Raley found the small threaded screw bolt in the bottom of the turtleback compartment. That the bolt was an inch long and a half inch in diameter, which screwed through a threaded eye on the upper right-hand corner of the turtleback lid on the inside of the compartment into a threaded socket of the car on the right side, in order to hold the right-hand corner of the lid in place. Neither the screw bolt nor the threaded socket into which it fitted was in any way broken or damaged, nor was the car damaged otherwise.

The case was submitted to the jury upon two special issues. The court first defined "wrecking" as it is defined in the policy, and then submitted the following two issues, which were answered in the affirmative:

"(1) Do you find from a preponderance of the evidence that the automobile in which the deceased was riding immediately before her injuries wrecked, as that term has hereinbefore been defined to you?

"(2) Do you find from a preponderance of the evidence that Mrs. Vera Raley, at the time said automobile was wrecked, sustained a bodily injury through external, violent and accidental means which resulted, independently and exclusively of all other causes, in her death?"

Upon the return of the verdict the court entered judgment in favor of appellee against appellant in the sum of $1,500 death benefits, with $200 attorney's fees and costs, decreeing that the judgment should bear interest at 6 per cent. annually.

The first contention to be considered is that the evidence did not make a case to be submitted to the jury under part II, subdivision (b), of the policy, because, as a matter of law, the testimony showed that the insured did not meet accidental death resulting, directly and independently of all other causes, from bodily injuries sustained through external, violent, or accidental means as a result of the wrecking of a four-wheeled automobile in which she was riding, within the policy definition of the term "wrecking."

According to the definition of wrecking or disablement, as used in the policy, they mean damages to the car accruing at the time of the injury, which damages required repairing, and of which damages there must have been visible mark upon the car. The universal rule is that policies being written by the insurer and not by the insured must be liberally construed in favor of the insured or beneficiary so as to avoid defeating, without plain necessity, a claim for indemnity; and when words used may, without violence, be given two interpretations, that which will sustain

the claim and cover the losses should be adopted.

■ The appellant briefs this case upon the assumption that the only evidence of wrecking was the fact that the right screw bolt became loose and dropped out of its socket and fell to the bottom of the luggage compartment of the car, where it was subsequently found. If the lid or turtleback had remained in position after that occurred, there might be merit in the contention; but this is not the record. The evidence shows that, because the right screw bolt came out of its socket, the lid slipped off of the left-hand screw bolt and the turtleback dropped from its position at both upper corners, still hanging loosely to the car at the bottom, which resulted in a crack or opening between the edge of the lid and the side of the compartment wide enough for the pig to stick his snout through. It is a reasonable presumption that as soon as the pig saw the opening caused by the screw bolt dropping out, resulting in the lid being disconnected from the car at both hinges and hanging only at the bottom, it tried to escape, and that is when Raley saw it. Immediately upon seeing the condition of the car Raley endeavored to stop, and it was then that his wife was thrown out of the door on the right-hand side. There is, therefore, a reasonable inference that the screw bolt dropped out just preceding the injury. It was a visible damage which Raley then saw and which he subsequently repaired. We believe these facts bring the case within the definition of "wrecking" as contained in the policy.

■ The words "wrecking" and "disablement," as used in accident insurance policies, are uniformly held by the courts to be ambiguous, and under such circumstances must be construed in favor of the insured. Federal Union Life Ins. Co. v. Richey's Adm'x, 256 Ky. 262, 75 S.W.(2d) 767; Kimbrough v. Nat'l Protective Ins. Ass'n, 225 Mo. App. 913, 35 S.W.(2d) 654, 657.

In the latter case it is said: "We are of opinion that paragraph A is subject to construction; that it will permit of more than one reasonable interpretation; that the exact purport, meaning, and intendment is not clearly and unequivocally expressed; that it is ambiguous and subject to that construction which, if reasonably possible, will give effect to the insuring clause. If this limiting paragraph be given the rigid and strict meaning claimed for it by respondent, there could be no recovery for injury arising out of any automobile collision unless the car was in fact a wreck, or disabled below ability for use.

Respondent contends, in effect, that one or the other of these things must have happened to the car before plaintiff can have any claim."

The Court refused to approve any such contention. National Casualty Co. v. Bogart, 125 Ohio St. 291, 181 N. E. 134.

In the case of National Casualty Company v. Mitchell, 162 Miss. 197, 138 So. 808, it is held that neither the extent of the damages which the car sustains nor the cost of repairs is the test of whether there was a wreck. The appellant contends in this case that the extent of the damages sustained and the cost of the repairs was nominal because all Raley had to do to repair the machine was to screw the screw bolt back into its place.

In the case of Zohner v. Sierra Nevada Life & Casualty Co., 114 Cal. App. 85, 299 P. 749, the court, citing authorities, holds that a car need not be demolished in order to come within the definition of "wrecking" as that term is defined in accident insurance policies.

■ Appellant further insists that the evidence does not meet the particular requirements of the policy in failing to show that the accidental death of Mrs. Raley resulted directly and independently of all other causes from bodily injuries sustained through external, violent, or accidental means. The general rule in such cases is that the presumption is in favor of an accidental death. Couch on Insurance, vol. 5, § 1140; Id. chapter XLV; Withers v. Pacific Mutual Ins. Co., 58 Mont. 485, 193 P. 566. The presumption is against suicide. United Fid. L. Ins. Co. v. Adair (Tex. Com. App.) 29 S.W.(2d) 944.

■ The Raley policy contains no stipulation relieving the company of liability on account of her negligence, so if it might be inferred that she opened the door and tried to alight from the moving car, that would be no defense. Even if it were pleaded and proven, her husband is nevertheless entitled to recover. 1 C. J. p. 450, § 123, p. 487, § 225; 14 R. C. L. 1256; Ætna Life Ins. Co. v. Hicks, 23 Tex. Civ. App. 74, 56 S. W. 87.

The contention of appellant that the doctrine of proximate cause applies to this case cannot be accepted without modification. As said in 24 Tex. Jur. 1085, § 276: "Distinguishing the term proximate cause as used in the law of insurance from its use in the law of negligence or tort, it has been held that defining it as 'that cause which in natural and continuous sequence, unbroken by any new cause, produces death, and without which death would not have occurred', was

not erroneous for failure to include the element of 'foreseeableness and anticipation of an injury or the result of such injury.' In other words, the law of proximate cause as applied in negligence actions is not given full effect in this state in actions on policies insuring against accident. Rather the rule is that the doctrine of proximate cause is applicable only in determining whether or not an injury or death was caused solely by the act or accident against which indemnity is given, while in ordinary negligence cases the proximate cause determines existence of the liability."

"Generally proximate cause is that cause which directly produces the effect, as distinguished from the remote cause. The cause which sets in motion a train of events which brings about a result without the intervention of any force operating and working actively from a new and independent source; but this does not necessarily mean a cause or condition nearest in time or place to the result." 1 C. J. p. 470.

In the note to the text there is the rule just quoted from Texas Jurisprudence, supra, and this is the rule upon which the case of Federal Ins. Co. v. White, under a policy identical with that involved in this case, was affirmed in favor of the appellee, White, in 23 S.W.(2d) 832, 834. It appears from the statement of the nature of that case that on January 22, 1927, White left Hanna, Wyo., for the purpose of driving to Medicine Bow, a distance of about 30 miles. When he left Hanna the temperature was 10 or 15 degrees below zero. After progressing some 15 miles, the car (a new Ford coupé) became disabled to such extent that it could not be operated or driven further. Mr. White then abandoned the car and started out on foot. That the roadway conditions of the untraversed part of his journey were no worse than that over which he had passed. After struggling on about two miles he was overcome by exposure to the cold, lost consciousness, and sank down in a snow bank. The following day he was picked up and carried to Medicine Bow. He died January 25, 1927; the immediate cause of his death being by freezing. The court held that the rule of proximate cause as applied in negligence cases could not be applied in its full scope in a suit upon a contract of insurance. We quote further: "We think clearly the controlling question here involved is: Was the disablement of the assured's car the proximate cause of his death? In the determination of this question the same rules of proximate cause, the intervention of new and independent causes, etc., apply as in any other character of case."

The judge who wrote the opinion in Federal Life Ins. Co. v. White, supra, said in part that the insurance company contended that White received no injury by reason of the disablement of the car, "but we think it reasonable, and the trial court was authorized to find, that immediately on leaving the disabled car he suffered injury in becoming cold, and in his efforts to find shelter he walked on, getting colder and colder, until he lost consciousness and sank down in a snow drift, where he was found the next day practically frozen to death. We think the agreed statement, in effect, shows the disablement of the car was the proximate cause of the deceased's death. His death was sustained immediately by freezing, but the disablement of the car caused him a long-continued exposure to the cold, and this long-continued exposure to the cold caused him to freeze to death. Clearly, we think, the disablement of the car was the sole proximate cause of the assured's death."

And so it may be said in this case that the immediate cause of Mrs. Raley's death was her fall from the moving car upon the hard surface of the road. In the absence of evidence showing how she happened to fall out of the car door, we must presume that her fall was accidental. But for the damaged condition of the turtleback of the car which required immediate attention, and set in motion the train of events which resulted in her death, the jury was authorized to presume that she would not have been thrown from the car. There being no evidence that she voluntarily intended to leave it, and there being a presumption against suicide, the jury may have concluded that she fell against the door while her husband was endeavoring to stop the car, causing it to open, or else the door opened from jostling or other cause, and that her accidental death followed. The wrecking of the car, caused primarily by the screw bolt dropping out of the hinge, was the cause which set in motion the train of events which, in the light of the above stated presumption, brought about the result, and that without evidence showing affirmatively the intervention of any force operating and working actively from a new and independent source.

The evidence, as hereinbefore outlined, fails to show any intervening cause for the door of the car on the right-hand side coming open, or any intervening cause for Mrs. Raley falling out or attempting to alight from

the car, and the rule is announced that, where the evidence fails to show any intervening cause, there can be no question of the fact that the accident, which in this case was the wrecking of the turtle back, must be held to be the proximate cause of her death. Meyer v. Fidelity, etc., Co., 96 Iowa, 378, 65 N. W. 328, 59 Am. St. Rep. 374; Prader v. Nat'l Masonic Ass'n, 95 Iowa, 149, 63 N. W. 601; Bailey v. Interstate Casualty Co., 8 App. Div. 127, 40 N. Y. S. 513, affirmed 158 N. Y. 723, 53 N. E. 1123; Miner v. Travelers' Ins. Co., 3 Ohio S. & C. P. 289, 2 Ohio N. P. 103; 1 C. J. p. 470, § 93–a.

The judgment is therefore affirmed.