**Jacqueline Woods BRUCKER, Plaintiff-Appellee,**

v.

**The ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA, Defendant-Appellant.**

**No. 11136.**

United States Court of Appeals Seventh Circuit.

Dec. 23, 1954.

James M. Winning, Giffin, Winning, Lindner & Newkirk, Springfield, Ill., for appellant. Alfred F. Newkirk, Springfield, Ill., of counsel.

G. William Horsley, L. H. Lenz, Springfield, Ill., Wayne C. Townley, Wayne C. Townley, Jr., Bloomington, Ill., for appellee.

Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

This is an appeal from a judgment entered upon a verdict for plaintiff in an action to recover accidental death benefits under the terms of a membership certificate issued by defendant, a fraternal benefit society organized under the law of the State of Ohio. The errors relied on arise out of instructions, rulings on evidence, and failure to grant defendant's motions for directed verdict, for judgment notwithstanding the verdict and for new trial.

In order to properly consider defendant's contentions that its motions for a directed verdict and for judgment notwithstanding the verdict should have been sustained, we set forth below the evidence in the record most favorable to plaintiff.

The membership certificate, which was issued to John C. Woods, stated that he was entitled to all the rights and benefits provided for Class A Insured Members in and by the constitution of said order and that "the benefit for death due to accidental means alone and independent of all other causes shall be" $5,000. A part of § 13 of article XV of the order's constitution, which counsel for both sides consider applicable to the case at bar, provides in part:

> "Class A Insured Members shall be indemnified in accordance with the terms hereinafter set out in this Article, against the results of bodily injury hereinafter mentioned, effected solely through external, violent and accidental means, herein termed the accident, which shall be occasioned by the said accident, alone and independent of all other causes."

Plaintiff, then known as Jacqueline C. Woods, daughter of the insured, is the beneficiary under the certificate.

Woods was employed as a claims adjuster with his office in Springfield, Illinois. In December, 1948, he was hospitalized and treated for angina pectoris because of pain, but he did not respond, and he was then treated for acute gastritis, to which treatment he responded. These facts, according to the attending physician, ruled out the possibility of a heart condition. A test, then made, did not show any evidence of a coronary occlusion or a coronary impairment; the heart vessels apparently were intact; they were not the cause of his hospitalization; there was a showing of myocardial strain, but the physician testified that the heart condition at that time was of minor importance. In January, 1952, he was treated for a throat infection at which time his blood pressure and pulse were normal, and an examination showed no gross heart enlargement, murmurs, thrills or irregularities.

Prior to May 7, 1952, he had the usual hobbies of fishing and hunting.

On that date, he was a well developed, well nourished man of 48 years, engaged in his customary pursuits as a claims adjuster. He met with his assistant in a tavern at Taylorville, Illinois, and again at a tavern in Springfield, during which meetings he indicated no physical distress and appeared to be in normal health. The two men separated about 7:30 p. m., Woods leaving to take dinner at a tavern. He was next found, in the early morning hours of May 8, 1952, behind the steering wheel of his car, which had collided with the rear end of a parked truck in a well lighted portion of South Ninth Street in Springfield. The truck with which he collided was dusty and silver in color, and was parked in the street about 3 feet from the curb line. It had no low bumper lights but did have top parking lights about 12 feet from the ground. Four feet of the car was wedged under the truck.

At the point of the collision, the street was 60 feet wide. No eye witness of the collision testified at the trial. A police officer found Woods sitting in a driving position, pinned between the

steering wheel and the seat with his head erect and his hands lying free in his lap. There was some blood on the right trouser leg. By flashlight he saw that Woods seemed to be breathing. He had a faint pulse. Woods was taken to St. John's Hospital in Springfield, where he was found dead on arrival. Sister Delores, who examined him upon arrival, found that he had injury to both legs and a deep laceration on head.

The police officer found no skid marks at the scene of the collision.

An autopsy was performed upon the deceased by Dr. Harry Steen, a pathologist, who died before the trial. His report, under the heading of "gross examination," stated that, but for an abrasion upon the right leg just above the knee, there were no marks of trauma on the body. The report gave as a final diagnosis of the cause of death: (1) coronary occlusion; (2) myocardial fibrosis; (3) acute passive congestion of lungs, liver, spleen and kidneys; and (4) abrasion of right leg.

Dr. Stericker testified for plaintiff, following his examination of the autopsy report and the tissue slides taken by Dr. Steen in the course of the autopsy. He said that in his opinion Woods had a disabled heart in December, 1948, that in January, 1952, assuming the records to be true, healing had taken place and at that time it was reasonable to assume that Woods had a serviceable heart. He explained that when the artery that receives blood is cut off from its blood supply, that portion of the heart muscle dies and healing takes place. If the occlusion remains, that particular artery does not open again, and the blood supply comes from behind the occlusion, by-passing it, and supplies blood to the muscle and if "there has been an occlusion of several months duration, and if the man is vigorous and attends to his everyday duties, I would assume that the heart had healed, the occlusion probably remaining. Even though there had been a healing, when an autopsy is performed you would al-

ways find the occlusion still present. In the usual and customary course of events, it is possible for a man to have such occlusion and healing and never know he has had it. After it remains normal for a long period of time and the man has returned to his daily work he has had a healed infarction." He also testified that trauma could injure the visceral organs, but that traumatic death is unusual, without visible external signs thereof; he further testified generally that shock, or dilation of the blood vessels, can cause death, but that fright cannot. From the autopsy report he testified that the coronary occlusion mentioned was of sufficient importance to denote death from natural causes; that this condition of the heart was not caused by trauma, but that from the autopsy he was not willing to conclude that the death was not caused by trauma. He further testified generally that usually a body does not bleed post mortem but that there would be some blood from a large vessel if there were an abrasion.

He further testified that there can be damage to the internal organs without trauma showing on the body, and that "I have an opinion that the violence of the collision can have an effect upon the heart of John Woods." He also testified that in his opinion a sudden collision can produce traumatic damage to the heart and that shock results from hemorrhage, concussion and trauma, and upsets the normal control of the great vessels, and they dilate, and sometimes victims bleed to death in their own veins. He testified that trauma does not always show externally, the autopsy is incomplete, the brain was not examined, there was evidence of external trauma, and he did not conclude that his death was not caused by trauma.

Dr. Holman, a defense witness, testified that from his examination of the autopsy report of Dr. Steen and of the tissue slides, he found a damaged heart condition sufficient to cause death and found nothing from such examination

sufficient to cause death by trauma. He testified that Woods' heart condition made him vulnerable to sudden death at any time; that the accident could have caused his death; that his death could have occurred while he was asleep in bed. He testified on cross-examination that he would have to assume that blood from the abrasion noted on the autopsy report would indicate that the abrasion was received before death. He also said that he had evidence of an old occlusion but none of a recent occlusion. He found healing and replacement of the tissue. He gave as his opinion that since Woods had lived for many months, he might have lived for many years. He stated that a body does not bleed after death and he would assume that Woods received an abrasion before death and that there is no evidence or record present that this man died immediately from coronary occlusion; that he was vulnerable at any time to sudden death which is brought about by over exertion or something that places a heavy strain on the heart. The excitement of hitting this truck or the jarring of his body could have caused his death. At the time of trauma it causes an acute dilation of the blood vessels. A severe blow in the chest can cause damage to the heart muscle. The coronary artery was not occluded by arterio-sclerosis. His death could have been caused from the excitement of the collision itself operating on the heart that had an old coronary occlusion.

1. Defendant contends that this case is governed by the law of the state of Ohio. While plaintiff contends that the law of the state of Illinois controls, she takes the position that this contention is immaterial because "even under the case law of Ohio, plaintiff would be entitled to recover in this case." Plaintiff then sets forth cases from both states. In view of the position taken by plaintiff we do not find it necessary to pass upon the contention of plaintiff which she herself says is immaterial.

We shall apply the case law of Ohio in deciding this case.

■ 2. In Order of United Commercial Travelers of America v. Etchen, 27 Ohio App. 422, 162 N.E. 636, in which the present defendant was a party, the certificate involved seems to be the same as that here under scrutiny. The insured was driving his automobile and it suddenly left the street and apparently struck a billboard. He was found unconscious and lying across the steering wheel, with blood flowing from a wound in his head and from the nose and mouth. A witness noted three pulse beats. When insured died does not appear from the opinion, but a post mortem examination disclosed that he was suffering from an aneurism on the arch of the aorta. The insurer contended that the real cause of the death was the aneurism. The court pointed out that there were marks upon the body showing some accident. It had held that there were facts and circumstances disclosed by the record from which the jury could have reached the conclusion that the death was due solely to an accident, and accordingly affirmed a judgment based upon a verdict in favor of the beneficiary named in the certificate.

In Fenton v. American Liability Co., 123 Ohio St. 97, 174 N.E. 254, an action on account of the death of the insured involved a policy insuring "against the effects of bodily injuries caused directly, solely and independently of all other causes, by external, violent and accidental means." The insured was seen sitting in his automobile in a ditch along a public highway and was leaning over apparently working with the clutch. He motioned to two men who stopped their car, but indicated that he did not need their assistance. Several hours later he was found partially out of the car and unconscious, with his head on the running board and one of his legs on the front seat of the car. The windshield wiper was operating. The car door was pressed against his body. He remained

unconscious until four days later when he died. An autopsy developed the fact that a blood vessel had burst in his head, and that this rupture was the immediate cause of his death. No bruises were found upon the body. The shifting brake in the transmission of his car was out of place immediately after the accident and the gears were locked, throwing the car into reverse gear. The insurer claimed that death was due entirely to a stroke of apoplexy and that the fall resulted from the stroke. The plaintiff contended that the insured fell accidently, which fall resulted in the rupture of the blood vessel.

The court said that the position of the insured, with his head bent under his body so that the weight of the entire body was almost resting on the side of his head and neck, might give rise to a reasonable inference of a violent fall; but, on the other hand, it might give rise to a reasonable inference of a stroke, resulting in a fall.

The court held that these circumstances did not require the trial court to direct a verdict for the insurer on the ground that there was no evidence of accident or of external and violent injury, saying "The question whether or not the insured has suffered such an injury as will entitle him to recover is for the jury, * * *."

In Nichols v. Loyal Protective Life Ins. Co., 63 Ohio App. 558, 27 N.E.2d 421, 423, it was held that it is not error to refuse to direct a verdict for an insurance company in an action to recover the amount of a policy insuring against accidental death, where it is shown that the decedent fell while walking on an icy sidewalk and died about three minutes later, that he received an open wound which bled freely, that there was physical evidence of bruises, and that upon embalming the body there was a seepage of blood from the ear on the side of the head upon which the bruises appeared, although the evidence also showed that the decedent was suffering from myocardial degenera-tion of the muscles of the heart; and the fact that, because of the condition of the decedent's heart, the fall may have affected him more seriously than another person, does not bar recovery.

The court said that:

"The evidence clearly supports the inference that he slipped on the ice and fell, and while it is true that because of his heart condition the injuries and shock from the fall may have affected him more seriously than it would a younger and more rugged man, or that a more rugged man might have survived the results of the fall, this would not bar a recovery."

To the same effect are United States Casualty Co. v. Thrush, 21 Ohio App. 129, 152 N.E. 796 and Union Indemnity Co. v. Gaines, 36 Ohio App. 165, 173 N.E. 29.

While we decide this case upon the case law of Ohio, we believe that this court, when applying the law of Illinois in Scanlan v. Metropolitan Life Ins. Co., 7 Cir., 93 F.2d 942, at page 946, announced the same general rules as are deducible from the Ohio decisions. We said:

"One may recover on an accident policy such as here in issue although the insured suffers from bodily infirmities. If the accident brought about conditions from which death resulted, the fact that the insured was ill, aged or infirm, or had bodily or mental infirmities, would not bar recovery provided the accident excited the bodily infirmity into activity and death resulted. If the infirmity alone would not have caused death, it cannot be said to have caused death when the immediate result was occasioned by an infirmity which became active only because of the accident. The infirmity may have made the insured less able to resist, but if the accident caused the condition which in turn affected the weak spot which did not resist as well as a healthy body, the cause is neverthe-

less the accident, and recovery cannot be avoided or evaded."

In the case at bar the verdict of the jury is supported by evidence of an abrasion upon the right leg and a deep laceration on the head of the insured, that there was bleeding prior to death, that he was driving a car which collided with great violence with a truck, causing insured to be wedged between the steering wheel and the seat; that he had a serviceable heart at that time and might have lived for many years; that the impact of the sudden collision could have produced traumatic damage to the heart and could have also caused the blood vessels to dilate; that insured was vulnerable to sudden death brought about by anything that placed a heavy strain on his heart, which had had an old coronary occlusion, such as the excitement of the collision or the jarring of his body caused thereby.

We have examined Mutual Life Ins. Co. of N. Y. v. Hess, 5 Cir., 161 F.2d 1; Gary Theatre Co. v. Columbia Pictures Corp., 7 Cir., 120 F.2d 891; and Massachusetts Protective Ass'n v. Mouber, 8 Cir., 110 F. 2d 203, relied on by defendant. We do not find them to be controlling here.

Therefore the court was not in error in refusing to direct a verdict for the defendant or to enter a judgment notwithstanding the verdict.

■ 3. The court admitted in evidence a hospital record. Defendant says this was error.

Before this exhibit was admitted, Sister Delores, a graduate nurse, who was employed as night supervisor of registration at St. John's Hospital, testified on direct examination and cross-examination in regard to the record. Her duties consisted of admission and registration of all patients, at the door. The exhibit is in her handwriting and signed by her.

While she did not remember this patient, her evidence shows that it was her customary practice to write down what she observed at the time she wrote it. It is a part of the official records of the hospital kept in the record room in the due course of its business. The wording "injured both legs and deep laceration head," is what she observed on the patient.

This exhibit was made by a trained person in the discharge of her usual duties and was kept as an official record of her employer, St. John's Hospital. The circumstances under which it was made and kept import verity and its admission in evidence was not error.

■ 4. The record reveals that after the jury had been instructed by the court as to the law applicable to the case it retired and commenced its deliberations. Thereafter the jury was recalled and its foreman asked for further instructions, to clear up a misunderstanding as to a part of the instructions given.

Thereupon, the court after conferring with counsel, said to the jury:

"Ladies and gentlemen of the Jury: The plaintiff in each of these cases is entitled to recover on the insurance contract if the death of John C. Woods was the result directly and independently of all other causes of bodily injuries effected solely through external, violent and accidental means, and was not caused directly or indirectly by bodily infirmity; then the plaintiff can recover upon such a contract. The burden is upon the plaintiff to prove those facts by the greater weight or preponderance of the evidence.

"But even though the jury should believe that Woods suffered certain bodily infirmities, prior to the accident in question, this fact alone would not prevent recovery if she has proven the other material facts that I have already outlined to the jury, provided by the policy.

"The insurance contract says the plaintiff would be entitled to recover if she has established by a preponderance of the evidence that John

C. Woods as a result, directly and independently of other causes, that he died of bodily injuries effected solely through external, violent and accidental means, and was not caused directly or indirectly by bodily infirmity.

"But, if bodily disease and infirmities did exist, that would not bar recovery if the death was brought about by accidental means. This is an accident policy. I am not in position to give you written instructions. The Court gives you oral instructions. I have only used parts of forms here and there and some are without reference to suggested instructions. But, if I have made that point clear you may retire and resume your deliberations. Is it advisable for me to wait, or will you prefer to call me later? I do not know if this will make a difference or not."

Defense counsel excepted to the "form of instructions just given by the Court, for the reason that the instruction purports to direct a verdict in favor of the plaintiffs if they prove certain matters, and then adds at the end thereof a statement to the effect that certain bodily disease will not prevent recovery. It is our opinion that under the law, the language of the policy controls, and that if the cause of death is contributed to in any respect by bodily disease or infirmity, that there can be no recovery."

The court overruled the exception and that action is now assigned as error.

This additional instruction was supplementary to the instruction on the same subject theretofore given by the court, as to which defendant made no exception. It was for the purpose of clarification.

We think that this additional instruction given by the court is not at variance with the law as stated in this opinion. It is not erroneous.

For the reasons hereinbefore set forth, the judgment of the District Court is

Affirmed.